UNITED STATES of America,
Plaintiff–Appellee,

v.

Andrew JACKSON, also known as
Elijah Jackson, Defendant–
Appellant.

No. 98–1909.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 21, 1999.

Decided Sept. 2, 1999.

Gail Joy Hoffman (argued), Thomas P. Schneider, Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Nathan Diamond–Falk (argued), Chicago, IL, for Defendant–Appellant.

Before BAUER, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

On January 16, 1998, Andrew Jackson ("Jackson") pled guilty to a one-count indictment charging him with distributing in excess of 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On April 2, 1998, Jackson was sentenced to 270 months' imprisonment, five years' supervised release, a $2,500 fine, and a special assessment in the amount of $100. On appeal, Jackson argues that the trial judge improperly classified him as a career offender; committed clear error in finding that he was neither a minimal nor minor participant pursuant to U.S.S.G. § 3B1.2; was unaware of his discretion to depart

downward in the face of a career offender enhancement; and erred by allowing the government to enhance the defendant's sentence by filing a new Information based, according to Jackson, on his refusal to cooperate. We affirm.

## I. BACKGROUND

In September 1997, the Milwaukee Police Department ("MPD") and the Milwaukee office of the Drug Enforcement Administration ("DEA") obtained information from a cooperating source ("CS") regarding Elijah Jackson, a.k.a. Andrew Jackson, and his alleged involvement in narcotics trafficking.[1] Based on the information provided by the CS, the MPD and DEA commenced a joint investigation into Jackson's alleged narcotics trafficking.

On September 14, 1997, MPD Detective Ray Weston met with Jackson at approximately 6:10 p.m. in the 4300 block of North 84th Street in Milwaukee to arrange for the purchase of one kilogram of cocaine. Jackson directed Detective Weston into the alley and the two proceeded into a nearby apartment.[2] Once inside the apartment, Jackson produced a package measuring 5" × 7" × 2". Jackson cut a "window" into the package which allowed Weston to observe a white chunky substance that he believed, based on his prior knowledge, training, and experience, to be cocaine. Weston then left the apartment, ostensibly to retrieve the necessary money. After Weston returned with a bag supposedly containing the money, DEA agents immediately and without a warrant entered the apartment and arrested Jackson.

Recovered from the apartment's kitchen table was a package fitting the description Detective Weston gave concerning the package he was intending to purchase from Jackson. A Cobalt–Thiocyanate field test was conducted on a small amount of the white chunky substance observed, revealing that it was cocaine. The cocaine weighed approximately 1,044 grams. The following drug paraphernalia and other items were seized in the apartment: 1) Plastic baggies and other packing material, including what appeared to be a clear plastic wrapper with duct tape which the agents believed was an empty kilogram wrapper. This wrapper was found in the garbage and was different from the one recovered on the kitchen table; 2) A size XL leather jacket containing six plastic baggies. Each baggie contained cocaine in the following amounts—13.3 grams, 13.4 grams, 27.4 grams, 12.4 grams, and 3.3 grams. Also contained in the jacket was a single paper fold containing cocaine weighing .9 grams and three other paper folds with cocaine weighing .9 grams, 1 gram, and .9 grams. The total weight of all these items, including packaging, is 87.8 grams; 3) A Tonica brand digital scale typically used to weigh cocaine; 4) Three cell phones; and 5) An electric coffee grinder which had white residue inside it.[3] Additionally, a search of the 1981 four-door Mercedes Benz Jackson drove to the drug deal revealed $100 cash and two baggies containing marijuana.[4] A search of Jackson's person revealed $954 cash and a pager. Additionally, when Jackson was processed at the Waukesha County Jail, the authorities recovered an elastic girdle which is commonly used to carry narcotics.

On October 28, 1997, a federal grand jury sitting in the Eastern District of Wisconsin returned a one-count indictment against Jackson, charging him with knowingly and intentionally distributing more than 500 grams of cocaine, in violation of

---

1. The CS had previously provided narcotics intelligence information to the DEA which had proven to be accurate.

2. Jackson paid all the expenses for his girlfriend and her daughter to live in the apartment.

3. This residue substance was never tested.

4. One baggie weighed approximately ½ ounce and the second weighed approximately ¼ pound.

21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On the same date an arraignment and plea hearing was conducted and Jackson entered a plea of not guilty to the indictment. Shortly thereafter, the government filed an Information pursuant to 21 U.S.C. § 851, seeking to enhance Jackson's penalties based upon his prior drug convictions.

On January 16, 1998, Jackson changed his plea and pled guilty to the one-count indictment. Thereafter, a Presentence Investigation Report ("PSR") was ordered and prepared on February 27, 1998. The PSR recommended that Jackson be given an enhancement under the Career Offender Provision of the Guidelines because he had two previous felony convictions involving controlled substances.

On April 2, 1998, Jackson was sentenced to 270 months' imprisonment, five years' supervised release, a $2,500 fine, and a $100 special assessment. In so sentencing Jackson, the district court determined that he was a career offender, as defined by U.S.S.G. § 4B1.1; that Jackson was not entitled to a minimal or minor role adjustment; that the government properly filed a new Information under 21 U.S.C. § 851, enhancing Jackson's mandatory minimum and maximum penalties; and that there was no reason to depart downward.

## II. ISSUES

On appeal, Jackson argues that the district court: 1) improperly classified Jackson as a career offender; 2) committed clear error in finding that Jackson was neither a minimal nor minor participant pursuant to U.S.S.G. § 3B1.2; 3) was unaware of its discretion to depart downward in the face of a career offender enhancement; and 4) erred by allowing the government to enhance his sentence by filing a new Information based, according to Jackson, on his refusal to cooperate.

5. The record does not reflect where these packets were recovered or how they were attributed to Jackson but, as noted, Jackson does not contest the fact that he was responsible for all nine packets of heroin.

## III. ANALYSIS

### A. Career Offender Provision

■ Jackson argues that his two prior convictions for controlled substance violations arose from the same course of conduct and should, therefore, be insufficient to trigger the career criminal provision. We review the district court's decision to sentence Jackson under the career criminal provision de novo. *See United States v. Jackson*, 177 F.3d 628, 632 (7th Cir. 1999).

Jackson's PSR outlined two previous controlled substance convictions which, as far as the underlying facts, Jackson does not dispute. The first of these two controlled substance violations occurred on February 2, 1978. On that date, Jackson was arrested for the charge of possession of heroin with intent to deliver after a police officer observed Jackson drop a small silver object on the ground. Presumably, Jackson was then stopped and frisked because the PSR notes, and Jackson does not dispute, that nine packets of heroin were then recovered from Jackson.[5] On April 24, 1980, Jackson was sentenced to 14 years' imprisonment for possession of heroin with intent to deliver.

On November 30, 1978, Jackson was arrested and charged with delivery of heroin to an undercover police officer.[6] Jackson was convicted, and on March 5, 1981, he was sentenced to 15 years' imprisonment to run concurrently with the 14-year sentence imposed in April of 1980. Jackson argues that because these two incidents were so close in time and involved the same drug they should be considered related and, therefore, he should not have been considered a career criminal.

■ The Sentencing Guidelines provide that a defendant is a "career offend-

6. Presumably, Jackson was released from jail prior to being convicted for the possession of heroin with intent to distribute charge.

er" if he or she 1) was over the age of eighteen at the time of the instant offense; 2) is convicted of the instant offense, which is a felony involving either a crime of violence or a controlled substance offense; and 3) has at least two prior convictions involving either a crime of violence or a controlled substance offense. See U.S.S.G. § 4B1.1. Because career offender status hinges, in part, on the existence of two prior convictions, a central inquiry is whether the prior convictions were "related," because

> [r]elated sentences are treated as only one conviction. Sentences are considered related if they were consolidated for trial or sentencing, *unless separated by an "intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)."*

*United States v. Coleman,* 38 F.3d 856, 859–60 (7th Cir.1994) (quoting U.S.S.G. § 4A1.2 Application Note 3) (emphasis added); *cf. United States v. Hudspeth,* 42 F.3d 1015, 1019–22 (7th Cir.1994) (en banc) (discussing relatedness within the context of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), and concluding that offenses are unrelated when they are distinct criminal episodes separated by the opportunity to desist from illegal activity); *see also United States v. Joseph,* 50 F.3d 401, 402 (7th Cir.1995); *United States v. Russell,* 2 F.3d 200, 202 (7th Cir.1993).

Jackson was initially arrested for possession of heroin on February 2, 1978. Almost ten months later, on November 30, 1978, Jackson was again arrested on heroin charges. Because Jackson was arrested for the first offense before he committed the second, the district court did not err in determining that his two previous drug convictions were unrelated and, therefore, in sentencing Jackson as a career offender.

**B.  *Downward Departure***

■  At sentencing, Jackson requested a downward departure from the career of-

fender guideline range on the basis that his criminal history category overrepresented the seriousness of his criminal conduct and the likelihood that he would commit other crimes. *See* U.S.S.G. § 4A1.3. The district court, however, stated that the criminal history of the defendant "undercuts any suggestion that Mr. Jackson ought receive the benefit of a downward departure."

In his brief on appeal, Jackson argues that the district court should have departed downward from the career offender guideline range, and that this court has the authority to review the decision because the district court believed it did not have the authority to depart downward. In so arguing, Jackson focuses on a portion of the district judge's oral ruling in which he stated,

> [o]nce the career offender provision is triggered, and there are, as I say, very discrete requirements in terms of triggering the provision, in my view, the departure provisions of the guidelines simply do not provide the escape mechanism from the otherwise applicable career offender provisions.

Jackson attempts to isolate this language from the rest of the sentencing hearing and convince this court that the district judge erroneously believed he was without the authority to depart downward. We are not convinced.

Just before making the statement Jackson emphatically focuses on, the court stated that:

> I suppose an argument could be made that if the career criminal provisions that are before the court this morning included matters such as failing to file a tax return and this is a drug case, that the prior criminal offenses were so disassociated or unrelated to the matters that bring all of us to this courtroom this morning that an argument could be made that the career offender provision shouldn't apply, *and if it* [the career

offender provision] *does, the court should depart.*

(emphasis added). It is clear from the trial court's above referenced statement that the trial judge was well aware that he had the power to order a downward departure if the facts warranted it, and that he in fact did consider the arguments the defendant raised.

■ The discretionary denial of a request for a downward departure is not reviewable on appeal unless that refusal was based on the court's erroneous belief that it was without the power to make the requested departure. *See United States v. Griffin,* 150 F.3d 778, 788 (7th Cir.1998); *United States v. Hillsman,* 141 F.3d 777, 780 (7th Cir.1998). Based on the above case law and a review of the transcripts, it is obvious that the trial judge was under no misapprehension concerning his authority to depart downward, therefore "[n]othing is left that is proper for appellate intervention." *United States v. Madoch,* 149 F.3d 596, 602 (7th Cir.1998). Accordingly, this court is without jurisdiction to review the district court's decision to deny the request for a downward departure.

### C. *Minimal or Minor Role*

■ On appeal, Jackson argues that the district court committed clear error when it determined that he was not entitled to a minimal or minor role adjustment[7] because "the amount of drugs involved in the offense ... had little to do with his limited role in the offense." There is no need to discuss Jackson's arguments concerning his entitlement to a minimal or minor role adjustment because

> in fact, the career offender provision of the Guidelines precluded such a reduction in this case.... A footnote to the career offender table indicates that the specified offense level may be decreased to account for the defendant's acceptance of responsibility (U.S.S.G.

§ 3E1.1), but does not indicate that other Chapter 3 adjustments, including those for the defendant's role in the offense, may be used to increase or decrease the offense level specified by the career offender table. *See* U.S.S.G. § 4B1.1 n.\*. Singling out the acceptance of responsibility reduction would, of course, have been unnecessary if all Chapter 3 adjustments could be applied to an offense level specified by section 4B1.1. That the guideline affirmatively embraces the section 3E1.1 adjustment therefore suggests that other Chapter 3 adjustments do not apply. *See United States v. Koonce,* 991 F.2d 693, 698 (11th Cir.1993). In fact, commentary accompanying the 1989 amendment adding the footnote to the offense level table set out in section 4B1.1 explains:

> The purpose of this amendment is to *authorize* the application of § 3E1.1 (Acceptance of Responsibility) to the determination of the offense level under this section to provide an incentive for the acceptance of responsibility by defendants subject to the career offender provision.

U.S.S.G. App. C. Amendment 266 (Effective November 1, 1989) (emphasis supplied). The language of this note confirms that in the absence of express authorization, Chapter 3 adjustments do not apply to the offense levels specified by section 4B1.1. *See United States v. McCoy,* 23 F.3d 216, 218 (9th Cir.1994) (per curiam). **Because the guideline expressly permits an adjustment for acceptance of responsibility but no other Chapter 3 adjustment, a reduction for the defendant's minor or minimal role in the offense is precluded.** *United States v. Beltran,* 122 F.3d 1156, 1160 (8th Cir.1997), citing *United States v. McNeil,* 90 F.3d 298, 300 (8th Cir.), *cert. denied,* 519 U.S. 1034, 117 S.Ct. 596, 136 L.Ed.2d 524 (1996); *McCoy,* 23

---

7. Normally, defendants who were minimal participants receive a four-level reduction, while defendants who were minor partici-pants receive a two-level reduction. *See* U.S.S.G. § 3B1.2.

F.3d at 218. Our contrary dictum in *United States v. Hernandez,* 79 F.3d 584, 598 (7th Cir.1996), *cert. denied,* 520 U.S. 1250, 117 S.Ct. 2407, 138 L.Ed.2d 173, 174 (1997), which dealt with an entirely different question, is not authoritative and should be disregarded.

*See United States v. Ward,* 144 F.3d 1024, 1036 (7th Cir.1998) (italics and citations in original) (bold emphasis added). Because Jackson was sentenced as a career offender, the minimal and minor role reductions do not apply, Accordingly, we disagree with the appellant's contention that he was entitled to a minimal or minor role adjustment and refuse to hold that the district court committed clear error in denying Jackson such a reduction.

**D. *Information Pursuant to 21 U.S.C. § 851***

■ Before a court may exercise jurisdiction to impose an enhanced sentence based on prior convictions, the government must comply with the procedural requirements of Title 21 U.S.C. § 851.[8] Jackson argues that the district court committed error in allowing the government to file a new Information pursuant to 21 U.S.C. § 851 because the government's decision to file such an Information was motivated by a desire to punish Jackson for refusing to cooperate, thereby punishing him for remaining silent. The government responds that its decision was not motivated by any "improper factors" and, therefore, its exercise of discretion was proper and required the filing of a new Information. We review the sufficiency of a § 851 Information de novo. *See United States v. King,* 127 F.3d 483, 487–88 (6th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1082, 140 L.Ed.2d 139 (1998); *United States v. Steen,* 55 F.3d 1022, 1025 (5th Cir.1995).

■ "The Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws." *United States v. Armstrong,* 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (internal quotations omitted). "They have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.'" *Id.* (quoting U.S. Const. art. II, § 3 and citing 28 U.S.C. §§ 516, 547). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his [or her] discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Furthermore, it has long been understood "that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." *United States v. Batchelder,* 442 U.S. 114, 123–24, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) (citations omitted). Moreover, in selecting which charge to file, "[a] prosecutor may be influenced by the penalties available upon conviction." *Id.* at 125, 99 S.Ct. 2198.

■ Obviously, a prosecutor's decision to charge a defendant with a particular crime necessarily implicates the range of potential penalties available to the court. For example, if a defendant used or carried a firearm during the commission of a crime of violence or a drug trafficking crime, the prosecutor enjoys absolute discretion over whether or not to charge him with a violation of 18 U.S.C. § 924(c)(1), *see United States v. Mrazek,* 998 F.2d 453, 454 (7th Cir.1993), which automatically institutes a five-year mandatory sentence to be served consecutively to that for the

---

8. This section states, in relevant part:

(a)(1) No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. . . .

underlying crime.[9] The discretion prosecutors are given to increase unilaterally the mandatory minimum sentence a defendant may receive by charging the defendant under § 924(c)(1) is analogous to the power of a prosecutor under § 851 to increase a defendant's mandatory minimum sentence by filing an information.

Insofar as prosecutors, as a practical matter, may be able to determine whether a particular defendant will be subject to the enhanced statutory maximum, any such discretion would be similar to the discretion a prosecutor exercises when he decides what, if any, charges to bring against a criminal suspect. Such discretion is an integral feature of the criminal justice system, and is appropriate, so long as it is not based upon improper factors.

*United States v. LaBonte,* 520 U.S. 751, 762, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997) (rejecting argument that prosecutorial discretion under § 851 leads to unwanted disparity) (citing *United States v. Armstrong,* 517 U.S. 456, 463–64, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) and *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985)). Thus, § 851 grants the government no greater power than that traditionally exercised by prosecutors in determining what charge to bring.

Sections 841 and 851 provide an opportunity for the government to seek a sentence enhancement by specifying the type of defendant and limiting the nature of the previous crimes that can be used to enhance. In providing this formula, the legislature has ensured that the opportunity to enhance is accompanied by multiple procedural safeguards for the defendant. Indeed, the provision is designed to ensure that the defendant has the opportunity to review the allegations and consider the consequences of his decisions prior to trial, and the discretion conferred on the prosecutor does nothing to detract from the achievement of this purpose. Jackson's broad, unsubstantiated claims that the government was motivated by "improper factors" and a desire to punish him for remaining silent do not persuade this court that the government improperly filed a new Information with the district court.

## IV. CONCLUSION

Because almost ten months passed between when Jackson was arrested for the first offense and when he committed the second, the district court did not err in determining that Jackson's two previous arrests were unrelated and, therefore, in sentencing him as a career offender. As noted, this court is without jurisdiction to review the district court's decision to deny the request for a downward departure. Finally, from our review, we are convinced that Jackson's broad, unsubstantiated claims that the government's filing of a new Information was motivated by "improper factors" and a desire to punish him for remaining silent are without merit. Accordingly, Jackson's conviction and sentence are

AFFIRMED.

---

9. Additionally, a prosecutor's decision to bring a charge under § 841(a)(1) rather than, for example, under § 843 (telephone count) necessarily carries with it profound sentencing implications.