In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1834

United States of America,

Plaintiff-Appellee,

v.

Paula L. Buford,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 98-CR-210--J.P. Stadtmueller, Chief Judge.

Argued November 17, 1999--Decided January 12, 2000

Before Eschbach, Easterbrook, and Rovner, Circuit
Judges.

Easterbrook, Circuit Judge.  Following her plea of
guilty to armed bank robbery, see 18 U.S.C.
sec.2113(a) and (d), Paula Buford was sentenced
to 188 months' imprisonment. The judge calculated
an offense level of 31 (including all
adjustments) after finding that she is a career
offender. This led to a sentencing range of 188
to 235 months' imprisonment. If she is not a
career offender, then her sentencing range is
only 84 to 105 months.

> A defendant is a career offender if (1)
> the defendant was at least eighteen years
> old at the time the defendant committed
> the instant offense of conviction, (2) the
> instant offense of conviction is a felony
> that is either a crime of violence or a
> controlled substance offense, and (3) the
> defendant has at least two prior felony
> convictions of either a crime of violence
> or a controlled substance offense.

U.S.S.G. sec.4B1.1. Buford was 42 when she robbed
the bank; armed bank robbery is a "crime of
violence", see U.S.S.G. sec.4B1.2(a)(1), even
though the object Buford described as a bomb
would not have exploded; and she has more than 22
prior convictions. Details of many convictions
are missing from the record, because state courts

have destroyed relevant documents (most of the crimes are more than a decade old) and Buford has not turned over information in her own possession. But the district judge counted five more-recent convictions that meet the standard of sec.4B1.1. In 1992 Buford was convicted in a Wisconsin court of four armed robberies and possessing cocaine with intent to deliver it.

Five exceeds two, but this does not end the discussion, because a definitional provision in sec.4B1.2(c)(2) says that, when counting convictions for purposes of the career offender provision, the judge must determine that "at least two of the aforementioned felony convictions are counted separately under the provisions of sec.4A1.1(a), (b), or (c)." Turning back to sec.4A1.2(a)(2) we find: "Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of sec.4A1.1(a), (b), and (c)." So when are cases "related"? Application Note 3 to sec.4A1.2 offers this advice:

> Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing.

Buford's four armed robberies and one drug offense did not occur on the same occasion. See United States v. Hudspeth, 42 F.3d 1015 (7th Cir. 1994) (en banc) (defining "occasion" for purposes of 18 U.S.C. sec.924(e)(1), the Armed Career Criminal statute). Nor were they part of a common scheme or plan. The district court sensibly rejected Buford's argument that all crimes designed to raise revenue are related by that objective, which would treat a one-woman crime wave as having but a single countable offense and thus negate the principal function of the career offender guideline. Buford therefore relies on (C), asserting that the cases were consolidated for sentencing. As is frequently true, the details are messy and defy easy characterization--and the Sentencing Commission has not offered guidance on intermediate situations.

Buford was arrested in Milwaukee on January 23, 1992, after robbing a gas station at gunpoint. A search of her residence turned up a pistol, the loot, and 73 grams of cocaine. Buford confessed

to three additional armed robberies of gas stations during 1990 and 1991. On January 27, 1992, state prosecutors filed two criminal complaints against Buford. The first charged her with committing five armed robberies. The second charged the drug offense and was assigned to a branch of the circuit court designated to handle drug prosecutions. Wis. Stat. sec.753.061(2). The cases were handled by different prosecutors and assigned to different judges. Buford pleaded guilty to four of the robberies and to the drug charge in separate hearings before the different judges. Sentencing in both prosecutions occurred on May 21, 1992, before the judge who had been assigned to the drug case. The record does not include an order of consolidation, though it does contain a letter from Buford's lawyer consenting to the procedure. The judge then imposed three sentences: 6 years for the drug offense; 12 years for two of the robberies; and 15 years for the other two robberies. These sentences ran concurrently. Two judgments (one for the robbery counts and one for the drug count) were entered. Wisconsin did not follow a truth-in-sentencing approach back in 1992; the 15-year sentence was "withheld" (a form of probation), and the 12-year term of imprisonment ended in less than 6 years, allowing Buford to rob a bank in 1998. Her federal 188-month sentence, which amounts to 15 years and 8 months, will keep her in prison for much longer than her state "15-year" sentence. (Wisconsin adopted a true-sentence approach effective January 1, 2000, too late for Buford.)

   Everyone agrees that the four armed robberies were consolidated with each other for trial and sentencing and thus count as but a single crime of violence for purposes of sec.4B1.1. Buford contends that the imposition of sentence by a single judge on a single occasion was a consolidation of the drug offense with the armed robberies for sentencing, within the meaning of Application Note 3. The federal prosecutor replies that there was no consolidation: there is no order of consolidation, and separate judgments were entered following the sentencing. We have held that joint sentencing for administrative convenience is not "consolidation for sentencing" under Application Note 3. United States v. Bomski, 125 F.3d 1115, 1119 (7th Cir. 1997); United States v. Stalbaum, 63 F.3d 537, 539 (7th Cir. 1995); United States v. Russell, 2 F.3d 200, 204 (7th Cir. 1993). But we have also held that a formal order of consolidation is unnecessary, and that cases may be deemed functionally consolidated when they are factually or logically related, and sentencing was joint. United States v. Joseph, 50 F.3d 401 (7th Cir. 1995). Here a single sentencing hearing, informed by a single presentence report, ended in concurrent

sentences. Buford contends that her crimes were related through her addiction and would have been charged in a single indictment or information but for Wisconsin's decision to require drug prosecutions to be handled separately. This is not so clear; Wisconsin follows the approach of Fed. R. Crim. P. 8(a), see Wis. Stat. sec.971.12(1), and it might be hard to characterize the robberies and drug offense as "of the same or similar character or . . . based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Anyway, the separate drug court cuts both ways: the crimes might have been consolidated but for their assignment to separate branches, but the separation shows that Wisconsin does not want such prosecutions consolidated--and Application Note 3 defers to the state's practice on consolidation rather than creating an independent federal rule. (Wisconsin's provision for separation is not airtight; the branches designated under sec.753.061(2) are to handle drug cases "primarily" but not exclusively, which is why a single judge was able to sentence Buford for both the robberies and the drug offense. But the statute assuredly disfavors consolidation.)

Because elements of Buford's situation support either characterization, the standard of appellate review may be dispositive. If review is deferential, then affirmance follows straightaway, for the district court's conclusion that Buford's state cases were not functionally consolidated for sentencing cannot be called clearly erroneous. But if our role is to make a de novo decision, then this appeal could come out either way. What, then, is the right appellate posture? Until recently the court has treated this as an unresolved question. See United States v. Carroll, 110 F.3d 457, 460 (7th Cir. 1997); United States v. Woods, 976 F.2d 1096, 1099 (7th Cir. 1992); United States v. Connor, 950 F.2d 1267, 1270 (7th Cir. 1991); Joseph, 50 F.3d at 404; Russell, 2 F.3d at 204. Within the last few months two panels have taken a firm stance--but unfortunately the panels do not agree with each other, and the more recent panel did not acknowledge the prior, contrary decision. Compare United States v. Joy, 192 F.3d 761, 770 (7th Cir. 1999) (relatedness is a factual issue reviewed only for clear error), with United States v. Jackson, 189 F.3d 655, 658 (7th Cir. 1999) (all questions about application of the career offender guideline are reviewed de novo). Neither Joy nor Jackson gives a reason for its conclusion or evinces awareness that the issue had been reserved by earlier panels. Divergence within the circuit mirrors a conflict among the circuits. Six review "relatedness" issues deferentially,

while three engage in de novo decisionmaking. See United States v. Correa, 114 F.3d 314, 317 (1st Cir. 1997) (de novo); United States v. Mapp, 170 F.3d 328, 338 (2d Cir. 1999) (deferential); United States v. Huggins, 191 F.3d 532, 539 (4th Cir. 1999) (deferential); United States v. Huskey, 137 F.3d 283, 285 (5th Cir. 1998) (de novo); United States v. Irons, 1999 U.S. App. Lexis 26887 at *9-10 (6th Cir. 1999) (deferential); United States v. Bartolotta, 153 F.3d 875, 879 (8th Cir. 1998) (deferential); United States v. Allen, 153 F.3d 1037, 1045 (9th Cir. 1998) (de novo); United States v. Wiseman, 172 F.3d 1196, 1219 (10th Cir. 1999) (deferential); United States v. Mullens, 65 F.3d 1560, 1565 (11th Cir. 1995) (deferential). By revisiting the subject, we can create at least intra-circuit harmony.

"Relatedness" and "consolidation" are not pure questions of law. No legal rule specifies what it means for cases to be "consolidated for sentencing." If in Joseph we had adopted the view that "consolidation" is a matter of form--cases are consolidated if there is an order of consolidation, otherwise not--then it would make sense to engage in de novo consideration. A record either contains an order of consolidation or it doesn't, which dictates a legal outcome-- though if the existence of the order were debatable, the district judge's resolution of that wholly factual issue would be reviewed deferentially. But once Joseph adopted a functional approach to consolidation, it became impossible to say that one characterization rather than another is mandatory. We have instead a classic mixed issue, where the court must apply legal norms to classify the facts. And disputes about the proper characterization of events, when legal norms guide rather than determine the answer, are principally committed to district courts, with deferential appellate review. Thus even though a finding of racial discrimination requires the application of law to facts, the existence of discrimination is itself a "fact" and review is for clear error only. Pullman-Standard v. Swint, 456 U.S. 273, 288 (1982). Whether an employee is a "seaman" under a multi-factor balancing approach likewise is a question of fact, with deferential appellate review. Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986). Even the question whether a complaint is "frivolous" for purposes of Fed. R. Civ. P. 11--a subject that requires no fact-finding by the district court-- is reviewed deferentially. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 401-05 (1990).

Cooter & Gell holds that when the legal inquiry resists statement as a rule of general

applicability, and when the application of that rule is a case-specific determination, courts of appeals should treat the district judges' conclusions deferentially. Our own cases likewise emphasize that matters of characterization and application, which lack general significance to other litigants, are best resolved by the district court, with a light appellate touch. See, e.g., Mars Steel Corp. v. Continental Bank N.A., 880 F.2d 928 (7th Cir. 1989) (en banc); Morton Community Unit School District No. 709 v. J.M., 152 F.3d 583 (7th Cir. 1998); Mucha v. King, 792 F.2d 602, 604-06 (7th Cir. 1986); Scandia Down Corp. v. Euroquilt, Inc., 772 F.2d 1423, 1428-29 (7th Cir. 1985). As the second circuit put the point in Mapp, 170 F.3d at 338 n.15, deferential review is appropriate "[b]ecause of the (obviously) fact-intensive nature of the inquiry and because a sentencing court's findings regarding factual relatedness in any given case are unlikely to establish widely-applicable principles of law". (None of the three circuits that has gone the other way has offered a reasoned explanation for the choice, and the fifth circuit in United States v. Garcia, 962 F.2d 479, 481 (5th Cir. 1992), explained that although the argument for deferential review is "compelling," the circuit would continue to use de novo review because of unexplained prior decisions.)

How best to understand the events in the Wisconsin courts in spring 1992 has no significance beyond these parties. Someone has to select a characterization of complex facts, and the best candidate for that role is the district judge. Questions concerning application of the Guidelines generally are reviewed deferentially, see Koon v. United States, 518 U.S. 81, 96-100 (1996), unless the district court makes an identifiable legal mistake; that principle is as applicable to "relatedness" as it was to the questions under review in Koon. We hold accordingly that whether cases have been "consolidated" for trial or sentencing is a matter of fact, to be reviewed deferentially by the court of appeals. Other issues in the application of the career-criminal guideline may be strictly matters of law with general application, and for those issues review would be plenary. Because this conclusion resolves a conflict among panels of this court, it was circulated to all active judges under Circuit Rule 40(e). None of the judges favored a hearing en banc.

The district judge did not commit a clear error in finding that the joint sentencing was a matter of administrative convenience rather than a "consolidation for sentencing." Separate

sentences were imposed and separate judgments entered. Treating Buford as a career offender makes a good deal of sense; her lengthy record demonstrates that she is an incorrigible criminal who regularly uses weapons (or, in her latest robbery, the threat of a bomb). With a record of convictions past two dozen, she is a "career" offender.

Affirmed