IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-50603

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAFAEL MORENO-ARREDONDO, also known
as RAFAEL MORENO,

Defendant-Appellant.

--------------------
Appeal from the United States District Court
for the Western District of Texas
--------------------
June 19, 2001

BEFORE DAVIS, WIENER, and STEWART, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Rafael Moreno-Arredondo ("Moreno") was convicted on his plea of guilty to one count of illegal re-entry into the United States in violation of 8 U.S.C. § 1326. The government sought and obtained enhancement of Moreno's sentence under § 1326(b)(2) based on pre-deportation convictions in Texas on two counts of committing the aggravated felony of Indecency with a Child. On appeal, Moreno asserts two claims: (1) His indictment was fatally defective for failing to allege his prior felony convictions as an element of the offense; and (2) the district court erred in calculating his sentence when it determined that the two prior child indecency sentences were for offenses that (a) did

not occur on the same occasion and (b) were not consolidated for trial, and thus were not "related" as that term is used in determining his criminal history score under sentencing guideline § 4A1.2(a)(2). We reject Moreno's attack on his indictment, which he concedes is foreclosed by the Supreme Court's ruling in <u>Almendarez-Torres v. United States</u>[1] that § 1326(b)(2) does not create a separate criminal offense but instead sets out a sentencing factor.[2] Agreeing with Moreno, however, that the state convictions for which he was sentenced more than a decade earlier were for offenses that "occurred on the same occasion"[3] and thus were "related" for purposes of § 4A1.2.(a)(2), we vacate his sentence and remand to the district court for resentencing.

## I. Facts and Proceedings

### A. <u>Background</u>

As noted, Moreno pleaded guilty to one count of illegal re-entry into the United States in violation of 8 U.S.C. § 1326. The government sought an enhanced penalty under § 1326(b), contending that Moreno had been deported subsequent to convictions in a state court in Texas of two aggravated felonies. The facts underlying the Texas convictions are not altogether clear and are internally inconsistent and contradictory, to say the least. There is no

---

[1] 523 U.S. 224, 235 (1998).

[2] Moreno expressly acknowledges that he raises the <u>Almendarez-Torres</u> claim solely to preserve it for further review on the basis of the Supreme Court's opinion in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) which expressed doubt about the correctness of its <u>Almendarez-Torres</u> decision.

[3] U.S. Sentencing Guidelines Manual § 4A1.2(a)(2), cmt., n.3 (2000).

question, though, that in 1988 Moreno was indicted for, charged with, and convicted of indecency with Monica and Marsha Garza, two minor daughters (respectively eight and nine years old at the time) of Moreno's then-girlfriend, Virginia Garza, in whose home he, she, and her children resided. The discrete facts underlying the convictions are less certain. According to the contemporaneous testimony of the two young girls, Moreno touched each of them inappropriately —— within moments; on the same day (while their mother was out shopping "for just a little while"); without ever leaving his seat on a couch in the front room of their house. Initially, Monica testified that Moreno had not touched her, after which she was excused from the witness stand and sent to sit with her mother in the rear of the courtroom while her sister, Marsha, testified. Marsha said that she had come into the front room of the house and had seen Monica sitting on the couch next to Moreno. According to Marsha, Monica then got up and left, and she (Marsha) went to the couch and sat next to Moreno, who then touched her inappropriately. At the conclusion of Marsha's testimony, Monica was recalled to the stand, and she testified that in fact Moreno had touched her. The sisters' testimony was inconsistent as to the sequence of the disputed touchings: Each girl testified that she had been touched first and had then left the room when the other entered.

In addition to that testimony, the prosecution introduced a statement prepared by a police officer and signed by Moreno while in custody following his arrest. In that statement Moreno admitted touching the girls, but said that both were present at the

3

beginning of the episode and that he had touched Monica first and Marsha second. Moreno's counsel unsuccessfully challenged the admission of the statement on the basis of involuntariness.

Moreno took the stand and denied inappropriately touching the girls at all, stating that he had confessed only because police officers told him several times while he was being processed following his arrest that "it would go better for [him]" and that if he did not confess "it would go very badly." Both Moreno and the interviewing police officer testified that Moreno had initially denied touching the girls or at least was equivocal about his involvement, and that only after he was being led from the interview to be locked up did he agree to sign the statement. In the end, the jury convicted Moreno on both counts.

Moreno had been charged in two separate indictments under separate cause numbers, but was tried on both charges in the same proceeding. He was also sentenced at one proceeding which culminated in the state trial court's assessing 20-year consecutive sentences. Moreno was released on parole in 1991, then deported to Mexico. Some time later, he re-entered the United States illegally.

B.   The Instant Proceedings

In 1997, Moreno was arrested in Texas on a charge of endangering a child by driving while intoxicated. While in jail on that charge, Moreno was discovered by officials of the Immigration and Naturalization Service, and the instant prosecution for illegal re-entry was initiated in federal district court. Thereafter, his

4

parole on the Texas indecency convictions was revoked, and he was sentenced to serve 40 years in state prison.

Following Moreno's conviction based on his guilty plea to the charge of illegal re-entry, the probation department prepared a Presentence Investigation Report (PSR). As Moreno had been deported following conviction for committing an aggravated felony, his base offense level was adjusted upward pursuant to § 2402(b)(1)(A). As a result, his base offense level of eight was increased by 16, to 24, from which it was reduced three points for acceptance of responsibility, producing a final level of 21.

In calculating Moreno's criminal history score, the probation officer added six points — three for each of the two prior sentences for Indecency with a Child — pursuant to guideline § 4A1.2(a)(2) after concluding that the cases were not related. This produced a final criminal history score of ten, resulting in a Criminal History Category of V. Moreno's sentencing guideline range was determined to be 70-87 months based on his offense level of 21 and his Criminal History Category of V.

Moreno filed a motion for a downward departure, contending that he was wrongfully convicted of the indecency charges, as confirmed by current statements of the alleged victims (now adults) who recanted the testimony that they had given as minors during his state court trial. Now adults, the girls explain that their grandmother, with whom they had been placed by "child protective services," had coerced them into falsely accusing Moreno of touching them. According to Marsha and Monica, their grandmother had told them that the only way they could return to live with

5

their mother was to "get her away from [Moreno]...." Twenty-one year-old Marsha, now married and the mother of two, testified at Moreno's federal sentencing hearing that she and her sister had falsely testified against Moreno in his state child indecency trial under pressure from their grandmother. Monica, who was pregnant and in labor at the time of Moreno's sentencing and thus unable to attend, filed a letter that states essentially the same thing.

Moreno also objected to the PSR's calculation of his criminal history score. He argued that his two state indecency sentences should have been treated as resulting from "related" cases for purposes of guideline § 4A1.2(a)(2), not from separate cases. If they had been treated as related, his criminal history score would have been increased by only three points, not six, which would have placed him in the lower Criminal History Category of IV, in turn producing a lower sentencing range.

The district court refused to depart downwardly and overruled Moreno's objection to the calculation of his criminal history score on the basis of separate rather than related convictions. The court imposed a 70-month sentence of imprisonment, the bottom of Moreno's guideline range. Moreno timely filed a notice of appeal, and this review ensued.

## II. Analysis

A. Issues Presented for Appeal

In the district court, Moreno advanced complaints about (1) his indictment, (2) the court's refusal to grant a downward departure based on the invalidity of his prior state indecency

convictions, (3) the continued application of <u>Almendarez-Torres</u>,[4] and (4) the calculation of his Criminal History Category on the basis of two unrelated prior sentences, contending they were related because they resulted from offenses that (a) occurred on the same occasion, (b) were part of a single common scheme or plan, and (c) were consolidated for both trial and sentencing. On appeal, however, Moreno presses only the <u>Almendarez-Torres</u> complaint and the criminal history issue implicating "related cases" for purposes of Guideline § 4A1.(2)(a)(2). Moreover, in pursuing the criminal history issue, Moreno relies on only two grounds for finding that the two Texas indecency sentences are related: that the offenses occurred on the same occasion and that they were consolidated for <u>trial</u>; he no longer contends that these offenses were part of a single common scheme or plan or that they were consolidated for <u>sentencing</u>. We shall address these remaining appellate issues in turn.

B.   The Almendarez-Torres <u>Issue</u>

Concededly advanced to preserve the issue for future review in light of the Supreme Court's decision in <u>Apprendi v. New Jersey</u>,[5] Moreno argues that his prior aggravated-felony conviction is an element of his illegal re-entry offense, not merely a sentence-enhancing factor. He notes that § 1326(a) specifies that an alien convicted of illegal re-entry following deportation faces a maximum prison sentence of only two years, but that § 1326(b)(2) specifies

---

[4] 523 U.S. 224 (1998).

[5] 530 U.S. 466 (2000).

7

a maximum sentence of 20 years if the alien was deported subsequent to a conviction for an aggravated felony. After holding in Almendarez-Torres that § 1326(b)(2) does not create a separate criminal offense but rather is a sentencing factor,[6] the Supreme Court in Apprendi expressed misgivings about the propriety of its Almendarez-Torres holding. Only the hope that the Court might eventually revisit and reverse its position prompted Moreno to lodge the issue here and thereby preserve it. As Almendarez-Torres remains good law, however,[7] we cannot grant relief to Moreno on this claim.

C. Calculation of Criminal History Score: "Related Cases"

1. Standard of Review.

"We accept district court findings relating to sentencing unless clearly erroneous, but we review de novo application of the guidelines."[8] "We review district court determinations about [] relatedness de novo,"[9] at least as to offenses asserted to have occurred on the same occasion.[10]

---

[6] Almendarez-Torres, 523 U.S. at 235.

[7] See United States v. Dabeit, 231 F.3d 979, 984 (5th Cir. 2000)(per curiam).

[8] United States v. Huskey, 137 F.3d 283, 285 (5th Cir. 1998).

[9] United States v. Fitzhugh, 984 F.2d 143, 146-47 (5th Cir. 1993), cert denied, 510 U.S. 895 (citing United States v. Garcia, 962 F.2d 479 (5th Cir. 1992) (noting absence of express holding on this subject and opting for de novo review).

[10] U.S. Sentencing Guidelines Manual § 4A1.2, cmt., n.3 (2000). Although de novo review of the "same occasion" prong of the guidelines' test for relatedness remains applicable under Huskey, supra, n.8, Fitzhugh, supra, n.9, and Garcia, supra, n.9, the Supreme Court's recent opinion in Buford v. United States, ___ U.S. ___, 121 S.Ct. 1276 (2001) requires "deferential review" of the

2.   Same Occasion.

Moreno does not question that, in the sentencing calculus of the guidelines, his criminal history score must include points for prior sentences, pursuant to § 4A1.2.  He complains only that the points by which his criminal history score is increased for prior sentences — specifically, for those sentences imposed by the State of Texas for Indecency with a Child — should total only three for

---

sentencing court's determination of the "consolidated for trial or sentences" prong, at least when the question is "functional consolidation."  See Buford, 121 S.Ct. at 1279 (quoting United States v. Buford, 201 F.3d 937, 940 (7th Cir. 2000) (Easterbrook, J.)).  The Supreme Court's opinion in Buford affirms the holding of the Seventh Circuit in the case of the same name, which, after an exhaustive review of the jurisprudence on the question of the consolidation prong of the relatedness test, analogizes the issue to one of mixed fact and law and ultimately rejects de novo review in favor of "deferential review."  And, although the Supreme Court's Buford opinion does not specify the degree of deference to be accorded to the sentencing court on the question of "functional consolidation," the Seventh Circuit's Buford opinion ( which the Court affirmed) does:  After rejecting de novo review in favor of deferential review, the Seventh Circuit concluded that "[t]he district judge did not commit a clear error in finding that the joint sentencing was a matter of administrative convenience rather than a 'consolidation for sentencing.'"  Buford, 201 F.3d at 942 (emphasis added).  Judge Easterbrook's opinion thus expressly applies the "clearly erroneous" standard, which is more deferential than de novo but less deferential than abuse of discretion.  Important for today's consideration, the Supreme Court's ruling in Buford — dealing as it does with the consolidation prong only — does not mandate a change in our circuit precedent — which has consistently specified de novo review of the district court's determination of relatedness — for  consideration of the "same occasion" prong of the test.  Moreover, the distinctions and reasoning of Buford, both in the Supreme Court and in the Seventh Circuit, relative to consolidation are inapplicable to the guidelines test's disjunctive "same occasion" prong, which is purely fact-based and, more importantly, is  determined by the district court's review of the same cold record of prior convictions and sentencing that the appellate court considers on appeal. And, because we decide today's "related case" issue solely on the basis of the "same occasion" prong, we need not and therefore do not address the consolidation prong which, after Buford, we would be constrained to review under the more deferential clear error standard.

both sentences, not three for each as assessed by the sentencing court. This is so, he insists, because the state sentences were imposed in related cases.

The operable provision of the guidelines is the disjunctive test of the second sentence of application note 3 in the Commentary accompanying § 4A1.2, which note reads in its entirety:

> <u>Related Cases</u>. Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (<u>i.e.</u>, the defendant is arrested for the first offense prior to committing the second offense). <u>Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion</u>, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing (emphasis added).

As Moreno does not pursue prong (B), and we do not reach prong (C), our determination whether Moreno's prior sentences for Indecency with a Child are "related" turns on whether the offenses that produced these sentences "occurred on the same occasion" within the intendment of prong (A) of application note 3.

The guidelines do not define "related," "occurred," or "occasion," for purposes of § 4A1.2 in general or application note 3 in particular. Black's Law Dictionary does not define "related." It does define "occur" (the verb of which "occurred" is the past form) as, <u>inter alia</u>, "to happen," "to take place," and "to arise"; and it does define the noun form of "occasion" as <u>inter alia</u>, "that which provides an opportunity for the causal agency to act," and "meaning not only particular time but carrying idea of opportunity, necessity, or need, or even cause in a limited sense." The 1986

10

edition of Webster's Third New International Dictionary, Unabridged, defines "related" as <u>inter alia</u>, "connected by reason of an established or discoverable relation," or "having similar properties"; defines the verb "occur" as <u>inter alia</u>, "to be present or met with," "exist," "come to pass," and "take place"; and defines the noun "occasion," as <u>inter alia</u>, a situation or set of circumstances favorable to a particular purpose or development," "a circumstance, occurrence, or state of affairs that provide ground or reason for something," and "a particular time at which something takes place:  a time marked by some happening."  The upshot of all this etymology is that we get no conclusive determination from legal or general dictionaries, so we must apply the widely-used and frequently-encountered words —— "related," "occurred," and "occasion" —— in their common sense, conversational meanings.  They simply are not terms of art.

Given Moreno's Dickensian experiences at the hands of his paramour, his "common law mother-in-law," and the paramour's young daughters at a time when they appear to have been mere pawns of their grandmother, in the context of the jails, courts, and prisons of Texas, together with his as yet unrequited redemption at the hands of his recanting former accusers, it is no simple task to determine "the facts" to which we must apply the "occurred on the same occasion" prong of the guidelines' test for related cases. Only by engaging in the "willing suspension of disbelief"[11] can we

---

[11] Samuel Taylor Coleridge, <u>Biographia Literaria</u>, ch. 14, <u>reprinted in</u> John Bartlett, <u>Familiar Quotations</u> 529 (14th ed. 1968).

settle on the appropriate facts to be factored into the test. When we do so, however, we conclude that the facts and inferences on which the state jury based its verdict of guilty on two counts of Indecency with a Child have the following "sameness": (1) The offenses are precisely the same (indecency with a child); (2) they occurred at precisely the same location (the couch in the front room of the house shared by the defendant and the victims); (3) they occurred not only on precisely the same day and during precisely the same hour, but within minutes of each other; and (4) they occurred without interruption, i.e., without the perpetrator's turning aside to any other activity. The only "separateness" in the purported commission of the two offenses is the absence of simultaneity and the existence of separate victims. Indeed, unless only one small girl had been the "victim" of these two touchings, or unless two young girls had been seated on the couch at the same time and had been touched simultaneously by an ambidextrous perpetrator, no more "related" occurrence on the same occasion can be imagined. The case law bears this out.

There is not a surfeit of jurisprudence construing the "same occasion" prong of the test for relatedness, but most opinions on the subject emphasize the temporal aspect and rely only to a lesser degree on the geographical or spatial aspect. In United States v. Johnson,[12] we construed the predecessor guideline phrase, "occurred on a single occasion"[13] and held that three offenses occurring on

---

[12] 961 F.2d 1188 (5th Cir, 1992).

[13] The "single occasion" language (see U.S. Sentencing Guidelines Manual § 4A1.2, cmt., n.3 (1990)) was replaced,

12

the same day —— DWI; driving with a suspended license; failure to identify himself to a police officer —— all occurred on a single occasion.[14] Even though the DWI and suspended license charges were moving violations and transpired simultaneously, the defendant had ceased to drive, thereby terminating both moving violations, before he committed the third offense, failure to identify himself.[15] Expressly relying on the close temporal proximity of the commission of the three offenses (and implicitly relying to a lesser degree on the spatial proximity of the defendant's presence in the car and the car's relatively short journey; and implicitly rejecting as irrelevant or immaterial the fact that the defendant likely did not form the mens rea to commit the failure-to-identify offense until after he had ceased to commit the two prior offenses, thereby purportedly completing one "occasion" before starting another), the Johnson court had no trouble concluding that "[i]t seems evident" that Johnson's three offenses occurred on the same occasion.[16] True, Johnson was convicted for committing three victimless offenses as compared to Moreno's convictions on two counts of violating the same offense but with different victims for each count; however, in both Johnson and Moreno, offenses were committed

---

effective November 1, 1999, with "same occasion" (see U.S. Sentencing Guidelines Manual, app. C, amend. 382) (2000)) without indicated or apparent change in the substantive meaning of the phrase. If anything, "same occasion" impresses us as being slightly broader and more flexible than "single occasion."

[14] Johnson, 961 F.2d at 1188.

[15] Id.

[16] Id. at 1189.

13

sequentially, albeit with but momentary temporal separations in each case. Moreover, there was at least a little geographical separation between the locations where Johnson committed his offenses but none with Moreno's, both of which took place in precisely the same, small space: the same seat, on the same couch, in the same room, in the same house. Some additional Johnson support for a same-occasion conclusion for Moreno lies in the fact that his two offenses were one and the same whereas Johnson committed three separate and distinct offenses.

As Moreno correctly notes in his reply brief, the government neither discusses nor cites Johnson, this circuit's principal jurisprudential authority — an omission that is usually a sign of weakness in an advocate's position. And, even when relying solely on authorities from other circuits, as it does here, the government fails either to mention or cite the Seventh Circuit's opinion in United States v. Connor.[17] The Connor court, like this court in Johnson, relied largely on temporal proximity as the controlling factor of the "same occasion" prong of the test when it found that the defendant's possession of weapons and possession of stolen goods "on the same date" occurred on the same occasion.[18]

Rather than squarely addressing the close temporal relation of the commission of the offenses in question, the government would make much of the absence of simultaneity, contending that because Moreno did not touch the little girls at precisely the same

_____

[17] 950 F.2d 1267 (7th Cir. 1991).

[18] Id. at 1270-71.

14

instant, the offense did not occur on the same occasion. As observed by Moreno, however, the government's reliance on the Eleventh Circuit's opinion in United States v. Jones[19] to support its simultaneity contention is misplaced. Jones does not stand for the proposition that offenses must occur simultaneously to meet the "same occasion" criterion; rather, Jones relies on the temporal aspect, holding that offenses occurring one-and-one-half hours apart in different geographic locations were "temporally distinct"[20] and therefore did not occur on the same occasion.[21]

The government's reliance on United States v. Williams[22] is likewise misplaced. The "same occasion" prong of § 4A1.2(a)(2) was neither discussed in nor implicated by Williams because the statute at issue there was the Armed Career Criminal Act (ACCA),[23] and we have held that the "occasions different from one another" provision of the ACCA is entirely different from the "same

---

[19] 899 F.2d 1097 (11th Cir. 1990), overruled on other grounds by United States v. Morrill, 984 F.2d 1136 (11th Cir. 1993)(en banc).

[20] Id. at 1101.

[21] Neither did the Eleventh Circuit in Jones make any reference to the government's other argument, that the lapse of time provided the defendant with an opportunity to form a separate criminal intent. Likewise, the government's reliance on Jones as supporting "separate victims" as a criterion for finding separate occasions is misleading: The number of victims is not relevant to testing for the "same occasion"; the number of victims can play a role only in the "common scheme or plan" prong of the test for relatedness, an issue that Moreno abandoned on appeal.

[22] 187 F.3d 429 (4th Cir. 1999).

[23] 18 U.S.C. § 924(e)(1)(2001).

occasion" prong of the relatedness test for purposes of calculating a criminal history under § 4A1.2.[24]

In sum, the pertinent case law from this circuit and others makes clear that simultaneity might support relatedness but that its absence is anything but fatal. The same is true for multiple victims. Neither simultaneity nor plurality of victims is an essential element of sameness by any stretch. It follows that as neither is a prerequisite for finding sameness, sequential commissions of offenses affecting different victims can comprise a single occurrence: Only the extent of the temporal separation between commissions can be controlling for purposes of the same-occurrence prong, and even then such separation must be viewed in light of other factors such as spatial separation, identity or non-identity of offenses, and the like. In addition to applying the primary yardstick of temporal separation in light of all pertinent circumstances, it must be applied with a healthy serving of common sense. Ultimately, the greater the common-sense differences in the other, non-temporal aspects of the facts and circumstances, the shorter the temporal attenuation needed to eschew sameness of occurrence.

### III. Conclusion

As must be obvious by now, we answer in the affirmative the question whether Moreno's two state sentences for indecency with a child result from "related cases" for purposes of guideline § 4A1.2. And we reach the same answer irrespective of whether we

---

[24] United States v. Medina-Gutierrez, 980 F.2d 980, 982-83 (5th Cir. 1992).

16

review the issue <u>de</u> <u>novo</u> or under the more deferential clear error standard.  Applying section (A) of application note 3 in the Commentary under § 4A1.2 — which specifies that cases are related if they produce sentences for offenses that "occurred on the same occasion" — we are convinced that Moreno's Texas sentences for purportedly touching Marcia and Monica Garza inappropriately within a matter of minutes and without moving from his seat on the couch in the front room of the house in which they resided unquestionably resulted from cases that are "related."  Even though the two offenses were not committed simultaneously (but they almost were) and were not committed against the same victim (but the victims were closely related to each other and had a relationship with the defendant), they were the identical offense, were committed at the identical geographic location, and were barely separated in time — literally by a matter of minutes.  Emphasizing temporal proximity but <u>in</u> <u>pari</u> <u>materia</u> with all other pertinent facts, we are firmly convinced that the cases are "related" for purposes of § 4A1.2.

Failure to treat the two cases as related in calculating Moreno's Criminal History Category produced an erroneously high sentencing range.  Moreno's criminal history score should have been increased by only three points, not six, because his sentence resulted from related cases.  We therefore vacate Moreno's sentence and remand for resentencing within a sentencing range of 57-71 months, the range produced when a criminal history score of 7

17

rather than 10 is used to reach a Criminal History Category of IV, and is applied in conjunction with his offense level of 21.[25]

SENTENCE VACATED; REMANDED FOR RESENTENCING.

---

[25] Having thus found that the two prior sentences are related because they resulted from cases that occurred on the same occasion, we need not reach and therefore do not address Moreno's alternative argument that the state indecency convictions were consolidated for purposes of trial.