UNITED STATES OF AMERICA,
Plaintiff–Appellee,

v.

Kenneth LEWIS, Defendant–Appellant.

No. 96–2972.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 7, 1997.

Decided March 24, 1997.

Melanie C. Conour, (argued), Office of the U.S. Atty., Indianapolis, IN, for Plaintiff–Appellee.

James C. McKinley, (argued), Kempf & McKinley, Indianapolis, IN, for Defendant–Appellant.

Before FAIRCHILD, CUMMINGS and KANNE, Circuit Judges.

FAIRCHILD, Circuit Judge.

A jury convicted Kenneth Lewis of conspiring with his cousin Tiawan Lewis and others to possess with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1), and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He was sentenced to a mandatory term of life imprisonment under 21 U.S.C. § 841(b)(1)(A)(iii), and appeals. We affirm.

## BACKGROUND

When Kenneth Lewis paged Crystal Davenport, a drug runner, on the evening of

August 9, 1995, his timing could not have been worse. Davenport had been arrested only moments earlier for attempting to sell an ounce of crack cocaine to an Indianapolis Police Department officer working in an undercover capacity. A firearm was found in Davenport's purse, along with 28 grams (approximately one ounce) of crack, a digital pager which was active and receiving calls at the time of the arrest, and several slips of paper with names and telephone numbers of individuals to whom Davenport had delivered crack cocaine. On an envelope also found in her purse, Davenport had written the name "Kenny" and the telephone number "926–6590."

While Davenport was being interviewed by police, the telephone number 926–6590 was transmitted to her pager. A female officer called the number (as if she were Davenport), and asked if someone had paged. The woman who answered said that "Kenny" had paged, that he would return in about ten minutes, and that the caller should try again. A few minutes later, a different officer, Burgess Ricks, called back and spoke with a man who identified himself as "Kenny." Kenny said he wanted one "onion" (a term referring to an ounce of cocaine base). When Officer Ricks asked if he knew the price, Kenny responded that he did, $1300, and he told Ricks to meet him in the usual place. Ricks asked where the usual place was, and Kenny responded 25th and Guilford.

At trial, Tiawan Lewis, who had made a plea agreement, testified that he and Kenneth Lewis had been distributing crack for approximately two months, that Kenneth gave him most of the $1300 needed, and that Kenneth sent him to buy the ounce.

Officer Ricks picked up Tiawan at the designated location. Ricks, who was equipped with a transmitting device and accompanied by a surveillance team, drove the car for a couple of blocks. Tiawan gave Ricks $1300 for the crack, and then requested another ounce for his cousin. At that point, law enforcement officers converged upon the car. Tiawan bolted out of the car and raced back to his residence at 2508 N. Guilford with officers in pursuit.

Outside the residence, Tiawan met Kenneth. They retreated into the residence and slammed the door, just as one of the pursuing officers reached the porch. Through an open window at the front of the residence, Kenneth aimed a semiautomatic firearm at the officer, who also had his gun drawn, and ordered the officer off the porch. After a short standoff, Tiawan and Kenneth surrendered. Kenneth's firearm was recovered from the residence, along with some cash, a combination safe, and a cartridge clip.

## ANALYSIS

On appeal, Kenneth asserts that the district court erred in admitting evidence of his prior convictions for drug felony offenses. He also claims error in the court's decision to admit the proffer letters and plea agreements of codefendants Davenport and Tiawan Lewis. In addition, he argues that the court erred in refusing to allow him to argue to the jury about his possible punishment. Finally, he appeals his sentence, claiming that the evidence was insufficient to establish that the conspiracy involved more than 50 grams of cocaine base so that a life sentence became mandatory.

### I. Rule 404(b) Evidence

At the close of trial, the district court took judicial notice, and informed the jury, of the fact that in 1991 and 1993, Kenneth had been convicted of possession of cocaine. Kenneth insists that this evidence constituted inadmissible character evidence improperly admitted under Federal Rule of Evidence 404(b). Rule 404(b) provides that evidence of "other crimes" is inadmissible to show that the defendant has a propensity to commit crime and that he acted consistently with that propensity. *United States v. Hernandez*, 84 F.3d 931, 935 (7th Cir.1996). However, "other crimes" evidence may be admissible to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b).

The district court found that the evidence of Kenneth's prior convictions was admissible under Rule 404(b) because it showed knowledge, intent, and the absence of mis-

take, and the court admonished the jury to consider the evidence for that purpose only. Judge Barker also determined that the probative value of that evidence was not substantially outweighed by the danger of unfair prejudice. *See* Fed.R.Evid. 403. We review the admission of the evidence only for an abuse of discretion. *United States v. Smith,* 103 F.3d 600, 602 (7th Cir.1996).

■ In determining whether the district court abused its discretion in admitting the above evidence, we consider whether (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows the "other act" is similar enough and close in time to be relevant to the matter in issue; (3) there is sufficient evidence to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Hernandez,* 84 F.3d at 935.

■ Kenneth focuses primarily on the first factor. He argues that evidence of his prior possession of cocaine is irrelevant to his purported intent in the present case to distribute cocaine base. However, "when a defendant is charged with a specific intent crime, the government may present other acts evidence to prove intent." *United States v. Long,* 86 F.3d 81, 84 (7th Cir.1996) (citations and internal quotations omitted). Kenneth was charged under 21 U.S.C. § 846 with conspiring to violate § 841(a)(1), which criminalizes "knowingly or intentionally" possessing cocaine with intent to distribute; thus, Kenneth was charged with a specific intent crime, and the admission of the other crimes evidence for the limited purpose of proving knowledge or intent was proper. Furthermore, the fact that Kenneth had twice previously possessed cocaine tends to establish his knowledge of the product and to corroborate Tiawan's testimony that it was cocaine base Kenneth sent him to obtain.

The remaining three factors are readily satisfied. Regarding the second factor, the 1991 and 1993 convictions were for crimes similar in time and manner to the 1995 offense; the crimes all related to cocaine possession and all occurred within four years of

each other. *United States v. Tringali,* 71 F.3d 1375, 1379 (7th Cir.1995) (nine-year lapse between drug offenses is sufficiently close in time), *cert. denied,* —— U.S. ——, 117 S.Ct. 87, 136 L.Ed.2d 43 (1996). As for the third factor, Kenneth's convictions establish that he possessed cocaine previously.

With respect to the fourth factor, the court acknowledged that the prior convictions were "prejudicial—obviously," but added that "the prejudice does not outweigh its probative value." The court continued:

> [T]he probative value does go to explain the defendant's intent and his knowledge and his absence of mistake with respect to the facts in issue in this case, that when the cocaine conspiracy was unfolding the defendant's knowledge about that conspiracy and the nature of the transaction ... that he had set in motion and agreed to commit with Tiawan was not a mistake perpetrated by Tiawan Lewis or somebody else. And in view of his involvement in the prior cases, it does show that.

(Tr. II–163–64.)

Trial judges faced with the problem of admissibility of other crimes evidence should cautiously approach the weighing of probative value against prejudicial effect of prior convictions. In this case, we have some question whether the government needed to introduce Kenneth's prior convictions in light of the dramatic circumstances surrounding the standoff outside Tiawan's residence and the obvious prejudicial impact presented by evidence of Kenneth's other crimes. We acknowledge, however, that other proof of Kenneth's knowing involvement in obtaining cocaine depended on (1) inferences from the officers' telephone calls answering the page and conversing with "Kenny" and (2) testimony of his accomplices. In this context, the probative value of the prior convictions in establishing his familiarity with cocaine could be significant. We find no abuse of discretion in Judge Barker's conclusion that the probative value was not outweighed by danger of unfair prejudice.

Moreover, after taking judicial notice of the two prior convictions, the judge provided jurors with limiting instructions, cautioning

them that they could consider the evidence of those convictions "only on the question of intent, knowledge, and absence of mistake or accident." (Tr. II–165.) We presume that the jurors followed their instructions. *Hernandez,* 84 F.3d at 935; *United States v. Curry,* 79 F.3d 1489, 1497 (7th Cir.1996).

## II. Bolstering

■ Kenneth next argues that the district court erred in admitting the codefendants' proffer letters and plea agreements into evidence. He contends that these documents, which referred to the codefendants' promises to provide truthful testimony, allowed the government to improperly bolster the credibility of the codefendants. Each plea agreement contained four references to the codefendant's obligation to provide "full, complete and truthful information." [1] In addition, the proffer letters emphasized that "complete and candid compliance" with the agreements was essential, and that any plea agreement would necessarily be based on the government's assessment of "the value of the information provided, your honesty, candor and special circumstances."

1. The four references to truthful testimony in the plea agreements pertained to the following topics: (1) the codefendants agreed to provide truthful testimony concerning Kenneth's as well as their own involvement with controlled substances; (2) the codefendants agreed that if they did not testify truthfully, they would be subject to prosecution for false statements before a grand jury or for perjury; (3) the codefendants acknowledged that if they did not testify truthfully, the agreements could be withdrawn; (4) the codefendants agreed to submit to polygraph examination regarding any matter covered by the agreement.

2. One provision in the plea agreements to which Kenneth particularly objects is the reference to the willingness of the witness to submit to a polygraph examination. Kenneth contends that such a provision improperly allows the government to vouch for the credibility of its witnesses. Kenneth's reliance upon *United States v. Hilton,* 772 F.2d 783 (11th Cir.1985), however, is misplaced. In that case, the prosecutor contended in final argument that crucial witnesses were credible because they had agreed to take polygraph examinations. *Id.* at 785–86 & n. 1. Here, by contrast, the government did not attempt to link the witnesses' credibility to the polygraph provisions of the plea agreement. In-

■ The well-settled rule in this circuit is that " 'on direct examination, the prosecutor may elicit testimony regarding the witness' plea agreement and actually introduce the plea agreement into evidence.' " *United States v. McNeal,* 77 F.3d 938, 945 (7th Cir. 1996) (quoting *United States v. Mealy,* 851 F.2d 890, 899 (7th Cir.1988)). One reason for this is that the prosecutor "ought to be able to extract the complete testimony of his witness, including the essential circumstances bearing on its believability, rather than forced to leave gaping holes to be poked at by his opponent." *United States v. Renteria,* 106 F.3d 765, 767 (7th Cir.1997) (internal quotations and citation omitted).

■ In preparing plea agreements, " 'the government should avoid unnecessarily repetitive references to truthfulness if it wishes to introduce the agreements into evidence.' " *Id.* at 767 n. 2 (quoting *Mealy,* 851 F.2d at 899). In this case, however, the references to the promise of truthfulness were not unnecessarily repetitive. The provisions at issue merely define the terms and conditions of the agreements between the codefendants and the government.[2] If any of the provisions of the proffers and plea agree-

deed, references to possible polygraph testing in this case were brought to the jury's attention only by defense counsel, not the prosecutor. Any error in admitting the reference to a polygraph was harmless.

Kenneth's citation to our decision in *United States v. Bursten,* 560 F.2d 779 (7th Cir.1977), is also unavailing. In that case, a key government witness signed a plea agreement containing one sentence in which he agreed to submit to a polygraph test regarding any pretrial disclosures. Over objection, the district court admitted an unredacted copy of the agreement. We condemned this practice, pointing out that such polygraph references could be exploited by prosecutors to insure the veracity of their witnesses' statements. *Id.* at 785. As previously noted, however, it was defense counsel rather than the prosecutor in this case who elected to repeat the words of the polygraph clause before the jury. Moreover, although we predicted in *Bursten* that we would reverse future cases in which prosecutors deliberately introduced polygraph references, we did not reverse the conviction in that case. Because the jury had an extended opportunity to observe the witness and evaluate his testimony, we concluded that admission of the objectionable sentence was not of the magnitude requiring reversal. We held that any error in admitting the sentence was harmless.

ments might have tended to enhance the credibility of these witnesses in the eyes of the jury, the judge's instructions should have dispelled any harmful effects.[3]

Under these circumstances, the district court did not abuse its discretion in allowing the government, during its direct examination, to introduce the agreements it had entered into with the codefendants.

### III. Arguing Punishment to the Jury

■ Kenneth also argues that the district court erred by refusing his pretrial request to advise the jury about the sentencing consequences of a guilty verdict. He contends that the jury, upon learning of his mandatory life sentence, would have deemed the penalty too great and exercised their unreviewable power to acquit.

Kenneth's request was properly denied. Without commenting on the propriety of jury nullification,[4] we note that the practice of informing juries about the sentencing consequences of their verdicts is strongly disfavored. The Supreme Court has stated that, unless a jury has a role in sentencing, such as in capital sentencing proceedings, jurors should be instructed not to consider a defendant's potential sentence during deliberations. *See Shannon v. United States*, 512 U.S. 573, 579, 114 S.Ct. 2419, 2424, 129 L.Ed.2d 459 (1994). The *Shannon* Court also pointed out that jurors generally "are not informed of mandatory minimum or maximum sentences." *Id.* at ——, 114 S.Ct. at 2428. *See United States v. Chesney*, 86 F.3d 564, 574 (6th Cir.1996).

In Kenneth's trial, the jury had no sentencing function, and no statute required that the jury be informed of the consequences of the verdict. The district court correctly re-

fused to allow Kenneth to argue about his potential punishment.

### IV. Sentencing

Finally, Kenneth appeals his sentence. The district court held him responsible for more than 50 grams of cocaine base, and sentenced him to a mandatory term of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A). That statute provides in pertinent part:

> In the case of a violation of subsection (a) of this section involving ... 50 grams or more of a mixture or substance ... which contains cocaine base ... such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life.... If any person commits a violation of this subparagraph ... after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release....

Kenneth faces the formidable task of demonstrating that the district court's drug quantity determination is clearly erroneous. *United States v. Rodriguez*, 67 F.3d 1312, 1324 (7th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996).

■ As pointed out in *Rodriguez*, the standard for determining the quantity of drugs "involved" in a conspiracy under § 841(b)(1)(A) differs from the "relevant conduct" approach typically applied in drug quantity calculations under the Guidelines. *Id.* (citing U.S.S.G. §§ 1B1.3, 2D1.1(c)). "While the guidelines look to behavior that was part of the same course of conduct as the offense of conviction, U.S.S.G. § 1B1.3, the

---

**3.** The court pointed out that the witnesses who agreed to plead guilty and testify "have received benefits from the United States in connection with testifying in this case." The court instructed further: "One who has entered into a plea agreement does not thereby become incompetent as a witness. However, the jury should keep in mind that such testimony is always to be received with caution and weighed with great care." (Instruction No. 33.) The court also informed the jurors that they were the "sole judge of the credibility of the witnesses" and that they should take into account "any interest, bias or

prejudice" the witnesses might have. (Instruction No. 31.)

**4.** "The principle ... that it is the duty of the jury to apply the law as declared by the court (notwithstanding the finality of an acquittal inconsistent with the law, and the resulting 'pardoning power' of the jury) was firmly established by the Supreme Court in *Sparf v. United States*, 156 U.S. 51, 106, 15 S.Ct. 273, 295, 39 L.Ed. 343 (1895)." *United States v. Dellinger*, 472 F.2d 340, 408 (7th Cir.1972).

statute looks 'only to the conduct which actually resulted in a conviction under that statute.' " *Id.* (quoting *United States v. Darmand,* 3 F.3d 1578, 1581 (2d Cir.1993)). The inquiries, however, become quite similar in conspiracy cases, in which each conspirator is responsible for drug amounts handled by co-conspirators if those amounts were foreseeable to him and in furtherance of the jointly undertaken criminal activity to which he agreed. *Id.*; *see Pinkerton v. United States,* 328 U.S. 640, 646–48, 66 S.Ct. 1180, 1183–85, 90 L.Ed. 1489 (1946).

Kenneth claims that he could not reasonably foresee the quantity of cocaine base which the district court found to be involved in the conspiracy. The only amount of crack properly attributable to him, he contends, is the one ounce (27.7 grams) specifically cited in the indictment. Had the district court found him accountable for only that amount, then Kenneth would have been eligible for a prison term between ten years and life. *See* 21 U.S.C. § 841(b)(1)(B)(iii).

At the sentencing hearing, Judge Barker made a finding that three ounces were involved in the conspiracy with Tiawan and Davenport. Judge Barker concentrated on the events of August 9, and stated that she agreed with testimony showing that three drug transactions took place that day, each involving one ounce of crack cocaine. She also stated that she adopted the factual findings in the presentence report, which described the drug distribution scheme and identified three separate one-ounce transactions occurring on August 9: (1) a delivery from Davenport to Kenneth and Tiawan earlier in the day; (2) Davenport's attempted sale to undercover officer Ricks that resulted in her arrest; and (3) Tiawan's attempted purchase from Ricks in the car outside the residence at 2508 N. Guilford.

The record supports the district court's finding that Kenneth was involved in a conspiracy with Tiawan and Davenport to possess and distribute at least 50 grams of cocaine base. There is evidence that Davenport had delivered crack cocaine to Kenneth on previous occasions, and those deliveries tend to make it foreseeable that further quantities were involved on August

9. Kenneth does not dispute that he is accountable for the overt acts specified in the indictment—placing the one-ounce order that led to the meeting between Officer Ricks and Tiawan outside 2508 N. Guilford.

Kenneth is also liable for his co-conspirators' possession of other ounces as long as their possession was in furtherance of the conspiracy and reasonably foreseeable. Proof that Kenneth performed any overt act is not required. *United States v. Shabani,* 513 U.S. 10, ——, ——, 115 S.Ct. 382, 383, 386, 130 L.Ed.2d 225 (1994) ("[T]he criminal agreement itself is the *actus reus.*"); *United States v. Garcia,* 45 F.3d 196, 198 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2012, 131 L.Ed.2d 1011 (1995). Thus two additional ounces were properly attributed to him. First, both Davenport and Tiawan testified at trial that Davenport had delivered crack cocaine to Kenneth at Tiawan's residence on the morning of August 9. The amount of crack in that delivery was one ounce, according to testimony presented at sentencing by a special agent of the Drug Enforcement Administration who had debriefed Davenport and Tiawan. Furthermore, the court was justified in taking into consideration the ounce of cocaine base that Davenport attempted to deliver to Officer Ricks on the evening of August 9. Although Kenneth was not present during that incident, this ounce of crack was foreseeable to him under *Pinkerton,* and thus properly attributable to him.

In light of the evidence of all three transactions, the district court did not err in determining that Kenneth was involved in a conspiracy involving at least 50 grams of crack cocaine for purposes of 21 U.S.C. § 841(b)(1)(A).

### CONCLUSION

For the foregoing reasons, the judgment of the district court is

AFFIRMED.