In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2901

United States of America,

Plaintiff-Appellee,

v.

Dennis D. Best,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 99 CR 189--Rudy Lozano, Judge.

Argued January 22, 2001--Decided May 10, 2001


   Before Bauer, Kanne, and Evans, Circuit
Judges.

   Bauer, Circuit Judge. Dennis Best asks us
to vacate his conviction for conspiracy
to possess with intent to distribute and
to distribute in excess of five grams of
crack cocaine and to grant him a new
trial. Best argues that the district
court committed reversible error in
admitting evidence of his prior
conviction for possession of crack
cocaine and of various incidents
surrounding the prior offense under Fed.
R. Evid. 404(b). In the alternative, Best
objects to his sentence, contending on
various grounds that the district court
erred in sentencing him as a career
offender. For the reasons set forth
below, we affirm Best's conviction and
sentence.

BACKGROUND

   On December 3, 1999, the Gary Response
Investigative Team ("GRIT"), led by the
FBI, set up surveillance on a house
located at 798 Porter Street in Gary,
Indiana. FBI agent Wallace observed
several individuals go in the house and
leave after a short stay, which suggested
to him the possibility that these visits
were drug deals. After observing two men
(later identified as Randle Conley and
Darryl Hoover) drive off following one
such visit, GRIT officers followed them

and stopped their car a mile or two from the house. GRIT Officer Jelks observed what appeared to be crack cocaine in plastic baggies on the front seat of the car, and Conley admitted to buying the crack. Officer Jelks believed that Eddie Nalls, a criminal suspect for whom there was an outstanding arrest warrant, might be in the house. Jelks showed Conley a picture of Nalls, and Conley identified Nalls as the person who sold him the crack. Jelks then obtained a telephonic search warrant for the house.

Meanwhile, continuing his surveillance of the house, Agent Wallace observed a blue Dodge Intrepid pull up to the house, and saw a number of men get out of the car and enter the house. The men returned to the car and drove off at approximately 5:15 p.m., and were soon stopped by GRIT officers. Four men were in the car: Best, Damien Williams, Donte Palm, and Conrad Richardson; no drugs were found in the car. All four were taken to the GRIT office.

The GRIT officers later searched the house pursuant to the warrant. Upon entering, they encountered Marcus Gardner, who was there alone. The agents noted that there was no stove or refrigerator in the kitchen, and that the house was without running water. Under the cushion of a couch in the living room, the agents found 21 knotted plastic bags ("dime bags") containing a total of 8.4 grams of cocaine base, and a total of $343.00 on the couch and on a nearby end table. Also in the living room, the agents found small plastic bags of the type used to package crack cocaine. In a bedroom, the agents found a utility bill for the house in the name of Damien Williams. Among other papers in a closet, the agents found two notices of Gary City Court appearances for Dennis Best.

The agents arrested Gardner, who cooperated by providing statements about his drug-related activities in the house, including incriminating statements about Best./1 At trial, Gardner testified that he had known Best for about a month before his arrest and that he was introduced to Best by a man who suggested that Gardner could sell drugs for Best from Best's house. Two weeks before his arrest, Gardner approached Best and asked Best about selling drugs. For one day

Gardner watched Best sell drugs to 19 customers and Gardner tried to remember their faces. Gardner then began selling crack at the house, working the 4:00 p.m. to 12:00 midnight shift. (Gardner claimed that Best worked the morning shift). Gardner sold about 50 dime bags of crack in both his first and second weeks. Gardner testified that the crack he sold was in the house under a pillow on the couch, and that he placed the money that he received on the table in the living room. He also testified that he did not have a key to the house, but that Best and his brother Jason had keys. Gardner testified that when he arrived at the house at about 4:30 on the day of his arrest, Best was in the house with Williams, Palm, and Conrad, playing a video game, and that the four left the house to get something to eat shortly thereafter.

Best was interviewed at the GRIT office. Agent Wallace gave Best an advice of rights form, and left him alone in a room to read it. During the interview, Best gave varying accounts of his relationship to the house and of his activities there. When FBI Agent Becker opened the lock which he had removed from the front door of the house with a key that was found on Best (and which Best admitted was his), Best opined that just because he had a key that opened the door did not mean that he lived there. When Becker asked Best who gave him the key, Best said he did not know. Best initially told Wallace that he had the key because he had lived at the house for a day or two before moving in with his daughter's mother. However, Best later told Becker that he had been to the house only five times, and that two of those times were on the day of his arrest.

Investigation revealed that the house was owned by Danny Crossley. Crossley's mother Lucille Crossley testified that she rented the house in October, 1999, to a young man representing himself as Donte Johnson. She stated that the man signed the lease and provided a social security number. She identified Best in court as the man who had signed the lease.

During the trial, the government called Troy Campbell, a detective with the Gary Police Department, to testify about his prior encounters with Best. The district

court permitted Campbell's testimony over Best's continuing objection, finding it probative of Best's intent, knowledge, and absence of mistake, and therefore admissible under Fed. R. Evid. 404(b). Campbell gave the following testimony: On November 21, 1997, he and other officers pursued a man named Garrett Smith, who was the subject of a homicide warrant, into a house at 532 Hovey Street in Gary. When they entered the house, Best, Smith, and another man ran out of the bedroom into the dining room. In the bedroom, the police found a baggie which contained 15.37 grams of crack in 10 knotted baggies and 6.16 grams of crack in 33 small Ziploc bags. The officers also found an additional 14 grams of crack contained in four knotted plastic bags. The officers found two electronic scales and small empty Ziploc bags in the dining room, and a large quantity of cash in the bedroom. In addition, Campbell testified that the officers found rounds of ammunition and magazines for guns in the house. Best was found to be carrying over $1000 at the time of the arrest. Moreover, the house on Hovey Street (which was about three blocks from the house on Porter Street) was rented in Best's name. Best served prison time for these charges.

The government also called Crystal Sturgeon, a forensic drug chemist for the Indiana State Police, to testify as to the results of chemical tests that she performed on the cocaine seized at the Hovey Street house on November 21, 1997. Over Best's continuing objection, the district court allowed Sturgeon's testimony, and allowed the government to introduce the actual crack seized during the November 21, 1997 incident. The crack was introduced via Exhibits 33 and 34. Sturgeon testified as to the net weight of the cocaine found in each Exhibit.

At trial, Best denied conspiring to distribute cocaine or possessing cocaine with intent to distribute. He testified that he went to the house on Porter Street to party with his friend Conrad Richardson on Richardson's birthday. He said that he arrived there at about 11:30, at which time Richardson, Palm, Williams, and Nalls were already there, and that he eventually became intoxicated and fell asleep./2 Best asserted that he awoke sometime around 4:30 or 5:00,

and that he and the others left the house to get something to eat when they were apprehended by the police. Best testified that he told the officers that he did not know anything about what was going on at the house. While he admitted to knowing what a dime bag of crack cocaine was, Best claimed that he did not see anyone selling crack in the house at Porter Street, and he denied knowing anything about crack being sold at the house. He also denied signing the lease for the house, testifying that he never saw Lucille Crossley before she testified in court. Finally, Best stated that he had never seen Conley before he testified in court.

Best admitted pleading guilty to possession of the drugs found at 532 Hovey Street in 1997. In addition, he testified that he pled guilty to two other felony charges: battery with a deadly weapon; and possession of a sawed-off shotgun. He stated that he served time in prison for these convictions.

The jury found Best guilty of conspiracy to possess with intent to distribute in excess of five grams of crack cocaine, but acquitted him of the charge of possession with intent to distribute in excess of five grams of crack cocaine.

Best's sentencing hearing was held on July 11, 2000. The Revised Pre-Sentence Investigation Report determined that Best's criminal history category was five and his total offense level was 32, and calculated his guideline imprisonment range to be between 188 and 235 months. The government objected to the report's criminal history determination, maintaining that Best qualified as a "career offender" under U.S.S.G. sec. 4B1.1 because he had two qualifying prior felony convictions, one for battery with a deadly weapon, and one for dealing a sawed-off shotgun. The district court determined Best to be a career offender under U.S.S.G. sec. 4B1.1, and sentenced Best to 360 months imprisonment.

Best appeals both his conviction and sentence. He argues that the district court erred in allowing the admission of the other crimes evidence under Fed. R. Evid. 404(b), and that this error entitles him to a reversal of his conviction and a new trial. In the alternative, Best

disputes the district court's finding that he qualified as a "career offender," and urges us to vacate his sentence and to remand for resentencing.

DISCUSSION

A) Prior bad acts under Fed. R. Evid. 404(b)

The district court found the testimony of Detective Campbell and of forensic chemist Crystal Sturgeon regarding Best's prior drug-related activity and conviction admissible under Fed. R. Evid. 404(b), concluding that the evidence was probative of Best's intent, knowledge, and absence of mistake with respect to the charged offense, and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. We review a district court's decision to admit evidence under Rule 404(b) for abuse of discretion. See United States v. Williams, 238 F.3d 871, 874 (7th Cir. 2001) (citation omitted). Best objects to the admission of this testimony on two grounds. First, he maintains that the evidence was not admissible to show his intent or absence of mistake with respect to the charged offense because he did not put his intent at issue. Second, he asserts that some of the evidence admitted through Campbell-- namely, that Campbell found Best in the Hovey Street house after pursuing a murder suspect into the house, and that he discovered ammunition and cartridges for guns there--were not sufficiently relevant or similar to Best's possession of drugs on the later occasion to be admissible under 404(b), and therefore amounted to impermissible character evidence that unduly prejudiced the jury against Best. We find both arguments unavailing.

Under Rule 404(b), evidence of prior convictions or of other misconduct is not admissible to show that a defendant has a propensity to commit crime and that he acted in conformity with that propensity on the occasion in question. See United States v. Wash, 231 F.3d 366, 370 (7th Cir. 2001) (citation omitted); United States v. Lewis, 110 F.3d 417, 419 (7th Cir. 1997) (citation omitted). However, such evidence "may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan,

knowledge, or identity." Wash, 231 F.3d at 370 (citation omitted); Lewis, 110 F.3d at 419. In determining the admissibility of evidence of prior acts under 404(b), we employ a four-part test:

(1) the evidence [must be] directed toward a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence [must] show[ ] that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence [must be] sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence [must] not [be] substantially outweighed by the danger of unfair prejudice.

Williams, 238 F.3d at 874 (citation omitted).

Applying this test, we find the facts that Best was found in the house on Hovey Street with distribution amounts of crack cocaine, that he had rented the house, and that he was subsequently convicted of possessing crack admissible under Rule 404(b). First, this evidence was probative of a matter in issue other than Best's propensity to commit the crimes charged. Specifically, it tended to establish Best's intent to commit the charged crimes. We have repeatedly held that when a defendant is charged with a specific intent crime, the government may introduce evidence of other acts to prove intent. See, e.g., United States v. Denberg, 212 F.3d 987, 993 (7th Cir. 2000) (citations omitted); Lewis, 110 F.3d at 420; United States v. Chaimson, 760 F.2d 798, 806 (7th Cir. 1985). This is so because "intent is a required element of [a specific intent crime], and the Government must prove each and every element of the crime charged beyond a reasonable doubt," Chaimson, 760 F.2d at 806, and therefore the defendant's intent is necessarily at issue in any prosecution for a specific intent crime. See United States v. Liefer, 778 F.2d 1236, 1242-43 (7th Cir. 1985). The crimes with which Best was charged--conspiracy to possess with intent to distribute and to distribute in excess of five grams of crack cocaine in violation of 21 U.S.C. sec.sec. 846 and 841(a)(1), and possession with intent to distribute in excess of five grams of crack cocaine in

violation of 21 U.S.C. sec. 841(a)(1)--
are both specific intent crimes. See
Lewis, 110 F.3d at 420; Wash, 231 F.3d at
370. Therefore, in this case, the
government was entitled to present
evidence of prior acts relevant and
probative of Best's intent to commit the
charged crimes. For example, to prove
that Best intended to distribute the
crack he possessed, the government could
introduce evidence of Best's prior acts
of drug trafficking, see United States v.
Allison, 120 F.3d 71, 74-75 (7th Cir.
1997), or of his previous possession of
distribution amounts of cocaine, see
Wash, 231 F.3d at 370-71, provided that
such evidence satisfies the other
conditions of admissibility.

Best acknowledges this general rule, but
argues that such evidence is inadmissible
to show his intent in this case because
he did not dispute the issue of intent.
Unfortunately for Best, we have rejected
this same argument on several occasions.
See, e.g., United States v. Brown, 34
F.3d 569, 573 (7th Cir. 1994) (ruling
that "a defendant cannot keep 404(b)
evidence out of his case by denying all
charges"); United States v. Mazzanti, 888
F.2d 1165, 1171 (7th Cir. 1989) (holding
that evidence of other acts was
admissible under Rule 404(b) to show the
defendant's intent in a prosecution for a
specific intent crime in order to
overcome the defendant's blanket denial
of wrongdoing which "was meant to negate
any evidence of intent"); United States
v. Monzon, 869 F.2d 338, 344 (7th Cir.
1989) (citations omitted) (holding other
act evidence admissible, and ruling that
"[i]n cases involving specific intent
crimes, intent is automatically in issue,
regardless of whether the Defendant has
made intent an issue in the case");
United States v. Harrod, 856 F.2d 996,
1001 (7th Cir. 1988) (citation and
internal quotation omitted) (holding
other act evidence admissible, and ruling
that "the [defendant] cannot remove
intent as an element of the Government's
proof by merely raising as a defense that
he did not participate in the crime
charged"); United States v. Draiman, 784
F.2d 248, 254 (7th Cir. 1986); Liefer,
778 F.2d at 1242-43; Chaimson, 760 F.2d
at 805-06; United States v. Weidman, 572
F.2d 1199, 1202-03 (7th Cir. 1978). We
find that the testimony concerning Best's
prior possession of distribution-level

amounts of cocaine at a house that he had rented, as well as his prior conviction for such possession, were probative of his intent to commit both of the crimes charged.

Moreover, the evidence was admissible to show Best's knowledge and lack of mistake. While Best admitted being present in the Porter Street house for several hours, he denied knowing that crack was being sold there. The details of Best's prior possession of crack at the house that he had rented on Hovey Street were properly admitted to show that Best had knowledge of the presence and distribution of crack in the Porter Street house (by inviting the inference that Best was familiar with the practices of crack distribution from a crack house), and to rebut any suggestion that Best's presence in the crack house was the result of an innocent mistake./3 See United States v. Tylkowski, 9 F.3d 1255, 1262 (7th Cir. 1993) ("Evidence of another crime which tends to undermine the defendant's innocent explanations for his act will be admitted.") (citation and internal quotation omitted). Therefore, we find that the evidence was offered to prove something other than Best's propensity to commit the crimes charged, thereby satisfying the first prong of the four-part test for admissibility of other act evidence under Rule 404(b).

We find that the three remaining prongs are satisfied as well. The prior cocaine offense was identical to one of the offenses charged in this case, and it occurred only a few blocks from the Porter Street house, making it sufficiently similar to the charged offense to be relevant. Furthermore, the events at the Hovey Street house transpired slightly over two years before the instant offenses, and therefore were sufficiently close in time to be relevant. See, e.g., United States v. Tringali, 71 F.3d 1375, 1379 (7th Cir. 1995) (concluding that evidence of participation in a cocaine conspiracy nine years earlier was admissible to show present knowledge and intent to distribute). In addition, the prior offenses were sufficiently proven to be admissible. Best acknowledged the prior offenses on cross-examination, and in any event his prior conviction establishes that he possessed cocaine previously. See

Lewis, 110 F.3d at 420. Moreover, the eyewitness testimony of Officer Campbell was sufficient to establish the occurrence of any prior events which were not covered by the conviction. See Allison, 120 F.3d at 75; United States v. Kreiser, 15 F.3d 635, 641 (7th Cir. 1994). Finally, we cannot dispute the district court's conclusion that the probative value was not substantially outweighed by unfair prejudice. We have already discussed the tendency of the evidence to prove Best's intent, knowledge, and the absence of mistake. By its very nature, any such probative evidence will be prejudicial. However, it will only be excluded if it is unfairly prejudicial. See United States v. Long, 86 F.3d 81, 86 (7th Cir. 1996) (citation omitted). This occurs "only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." Id. (quotation and citation omitted). Best does not demonstrate that the evidence would induce the jury to find Best guilty on some improper ground given the limited purpose for which it was offered. Moreover, the district court instructed the jury that they were to consider the other act evidence only for the limited purpose of ascertaining Best's intent, knowledge, and absence of mistake, and we have held that similar limiting instructions "are effective in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence." See Denberg, 212 F.3d at 994 (citations omitted).

The propriety of the district court's admission of some of the more inflammatory (and less obviously relevant) details surrounding the prior incident at the Hovey Street house presents a closer question. The district court allowed officer Campbell to testify that he came upon Best in the Hovey Street house after pursuing a homicide suspect into the house, and that he saw gun ammunition and cartridges in the house. This arguably invited the jury to infer that Best associated with suspected murderers and possessed firearms, thereby potentially raising the specter of unfair prejudice. While evidence that Best possessed distribution levels of crack on a prior occasion is relevant and admissible to show his intent with respects to the crimes charged in this

case, it does not necessarily follow that the admission of other evidence stemming from the Hovey Street house episode is similarly relevant and admissible. See United States v. Johnson, 137 F.3d 970, 975 (7th Cir. 1998) (holding that while evidence of the defendant's prior possession of a distribution-size quantity of cocaine was admissible to prove his intent to distribute cocaine on a later occasion, his possession of a pistol and his fight with the police on the earlier occasion "did not help the jury analyze [his] intent" to commit the charged offense, and therefore should not have been admitted). We conclude that the facts that officer Campbell chased a murder suspect into the Hovey Street house and saw gun cartridges and ammunition were of tenuous relevance to Best's intent to commit the charged offenses and should not have been admitted.

Nevertheless, the admission of this evidence was harmless error. Officer Campbell made only a single reference to the gun cartridges and ammunition, and the government did not introduce either the ammunition or photographs of it. Moreover, when Best took the stand, the government impeached him by mentioning his prior felony convictions for possession of a sawed-off shotgun and assault with a deadly weapon which occurred around the same time as theincident at the Hovey Street house. Therefore, the jury would have known that Best possessed firearms even if Campbell's testimony had been stricken. Thus, considering that Campbell's brief reference to gun cartridges and ammunition was likely to have far less of an impact on the jury than would his prior gun-related convictions, it is extremely doubtful that the jury may have been more likely to convict Best due to an emotional reaction to Campbell's testimony. Moreover, the other evidence against Best was compelling. In addition to Conley's and Gardner's testimony that Best dealt crack out of the house on Porter Street, Lucille Crossley identified Best as the man who had leased the house, Best was found carrying a key to the house, notices for Best's court appearances were found in a closet in the house, and Best gave the officers conflicting accounts of his activities in the house. It seems highly unlikely that

Campbell's testimony affected the verdict, especially given the district court's limiting instruction regarding all of the prior act evidence.

B)  Whether Best's prior sentences should be considered related

 Best challenges the district court's decision to sentence him as a career offender under U.S.S.G. sec. 4B1.1. Thatprovision provides that

[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. sec. 4B1.1. Only certain convictions may be counted in determining a defendant's status as a career offender. Specifically, U.S.S.G. sec. 4B1.2(c) states that, when counting convictions for purposes of the "career offender" provision, the judge must determine that "at least two of theaforementioned felony convictions are counted separately under the provisions of 4A1.1(a), (b), or (c)." U.S.S.G. sec. 4A1.2(a)(2) provides that "prior sentences imposed in unrelated cases are to be counted separately," while "[p]rior sentences imposed in related cases are to be treated as one sentence for purposes of sec. 4A1.1(a), (b), and (c)." Therefore, whether any two prior convictions may be counted separately for purposes of the career offender provision depends upon whether the sentences imposed for the convictions were "related." In determining whether any particular sentences are "related," we are guided by Application Note 3 to sec. 4A1.2, which states:

Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred

on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing.

Best concedes that he meets sec. 4B1.1's first two definitional criteria of a career offender, as he was over 18 when he committed the instant controlled substance offense. However, he disputes the district court's conclusion that he had the requisite number of prior felony convictions, arguing that the two prior felony convictions relied on by the government should not have been counted separately because they were consolidated for sentencing. The government pointed to two prior felony convictions: battery with a deadly weapon, which occurred on October 8, 1997, and dealing in a sawed-off shotgun, which occurred on November 9, 1997. These two charges, together with a charge for possession of cocaine which occurred on November 21, 1997, were disposed of by means of one plea agreement at a single sentencing hearing held on June 11, 1998. However, the sentencing court did not issue a formal order of consolidation. The question is whether the charges relied on by the government were nevertheless "consolidated for sentencing." The district court found that they were not, and we review the district court's conclusion for clear error. See United States v. Buford, 201 F.3d 937, 942 (7th Cir. 2000), aff'd 121 S.Ct. 1276 (2001).

Cases may be deemed consolidated for sentencing even without a formal notice of consolidation, where the cases "are factually or logically related, and sentencing was joint." See Buford, 201 F.3d at 940 (7th Cir. 2000) (citation omitted). We have called this "functional consolidation." See id. However, joint sentencing for administrative convenience is not "consolidation for sentencing" under Application Note 3 to sec. 4A1.2, see id. (citations omitted), and the mere fact that a defendant was sentenced for multiple offenses on the same day does not establish that his sentences were consolidated rather than merely disposed of simultaneously for the sake of convenience. See United States v. Stalbaum, 63 F.3d 537, 539 (7th Cir. 1995) (citation omitted). Therefore, in the absence of a formal order of consolidation, we will deem sentences functionally consolidated only where there is "a showing on the record of the

sentencing hearing that the sentencing judge considered the cases sufficiently related for consolidation and effectively entered one sentence for the multiple convictions." See id. (citing United States v. Russell, 2 F.3d 200, 204 (7th Cir. 1993)).

Best does not identify any such showing. Moreover, there are several indications in the record that the sentencing judge did not consider the offenses to be consolidated. For example, while the court imposed concurrent sentences for the offenses, it imposed separate sentences of varying lengths rather than a single sentence. See Buford, 201 F.3d at 942 (affirming district court's conclusion that prior sentences were not consolidated where "separate sentences were imposed and separate judgments entered."); United States v. Sexton, 2 F.3d 218, 219 (7th Cir. 1993) (citations omitted) (holding that "concurrent sentences do not automatically create cases consolidated for sentencing."). In addition, the three prior cases were filed under separate court docket numbers, and the sentencing court retained the separate docket numbers for sentencing purposes, entering separate judgments and sentences for each court docket number. See Stalbaum, 63 F.3d at 539-40 (finding no consolidation where the sentencing court retained the original, separate docket numbers and imposed a separate--albeit concurrent-- sentence for each offense, even though there was only one judgment of conviction for three offenses). Finally, the crimes of battery with a deadly weapon and dealing in a sawed-off shotgun occurred on separate occasions approximately one month apart, and there is no indication (apart from Best's conclusory assertion) that they were factually or logically related or that the sentencing court thought that they were. See United States v. Joseph, 50 F.3d 401, 404 (7th Cir. 1995). Without some such indication or a formal order of consolidation, Best cannot establish that the sentences were functionally consolidated. See United States v. Bomski, 125 F.3d 1115, 1119 (7th Cir. 1997).

Relying on United States v. Russell, 2 F.3d 200, 204 (7th Cir. 1993), Best argues that the sentencing court treated the two offenses as consolidated for

sentencing because "the sentence for one conviction was . . . affected by the conduct under the other charge," in that each sentence took into account as an aggravating factor the conviction underlying the other sentence. However, the sentencing court considered the other convictions only for purposes of determining the defendant's criminal history. If such use of prior convictions by itself constituted consolidation for sentencing, then any use of prior convictions for criminal history purposes (no matter how remote in time or factually and/or logically distinct from the current offense the prior convictions were) would suffice to consolidate the prior convictions with the current conviction for sentencing purposes. Such a result contravenes both common sense and our precedent. Moreover, even if the sentencing court's consideration of the conviction underlying one charge as an aggravating factor in imposing the sentence on the other charge weighs in favor of a finding of functional consolidation, there are several factors present in this case which point towards the opposite conclusion. Therefore, we cannot say that the district court erred in finding the prior sentences unrelated and in sentencing Best as a career offender. See Buford, 201 F.3d at 940, 942 (finding no clear error where "elements of [the defendant's] situation support[ed] either characterization.").

C) Whether dealing in a sawed-off shotgun is a "crime of violence"

Best's final argument can be disposed of summarily. Best contends that he should not have been sentenced as a career offender because his conviction for dealing in a sawed-off shotgun in violation of Ind. Code sec. 35-47-5-4.1 is not a "crime of violence" within the meaning of U.S.S.G. sec. 4B1.2. Unfortunately for Best, we have recently rejected this argument, and have joined two other circuits in holding that possession of a sawed-off shotgun is an offense which "involves conduct that presents a serious potential risk of physical injury to another," thereby rendering it a "crime of violence" under U.S.S.G. sec. 4B1.2(a)(2). See United States v. Brazeau, 237 F.3d 842, 844-45 (7th Cir. 2001); see also United States v. Allegree, 175 F.3d 648, 651 (8th Cir.

1999); United States v. Hayes, 7 F.3d
144, 145 (9th Cir. 1993); cf. United
States v. Fortes, 141 F.3d 1, 7-8 (1st
Cir. 1998).

CONCLUSION

   For the foregoing reasons, we AFFIRM
Best's conviction and sentence.

FOOTNOTES

/1 Conley also cooperated with the government.
When the FBI interviewed him and showed him
photospreads which included photographs of Best
and Gardner, he identified Gardner as the person
who had sold him crack on the day of his arrest.
However, at trial, Conley stated that Best was
the man whom he identified, and stated that he
was "pretty certain" that he was the man.
Moreover, Conley testified that he had bought
crack at the house the day before his arrest.

/2 Best also testified that Nalls left the house
while he was sleeping, but that Nalls gave Best
a key to the house before he left, because Best
and the others had planned to leave the house and
return later.

/3 Relying on United States v. Murphy, 935 F.2d 899
(7th Cir. 1991), Best argues that the prior bad
act evidence was not admissible to show absence
of mistake, because he did not claim that he
committed the charged actions accidentally or by
mistake.  However, Murphy does not stand for the
proposition that prior act evidence is admissible
under Rule 404(b) only when the defendant asserts
that he committed the charged act by mistake.
Indeed, such a suggestion would contradict our
precedent. See, e.g., Williams, 238 F.3d at 875-
76 (holding evidence of defendant's prior narcot-
ics activities admissible to show, inter alia,
intent, knowledge, and absence of mistake in a
prosecution for possession of cocaine with intent
to distribute, where the defendant denied pos-
sessing the cocaine altogether).