# In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-3720

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

CURTIS GRAVES,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 02 CR 127—**David F. Hamilton**, *Judge.*

———————

ARGUED MAY 13, 2005—DECIDED AUGUST 12, 2005

———————

Before CUDAHY, EASTERBROOK, and KANNE, *Circuit
Judges.*

KANNE, *Circuit Judge.* Curtis Graves was arrested and
charged with two counts of possession with intent to
distribute 50 or more grams of crack cocaine. On appeal he
argues that his conviction should be overturned and that he
was improperly sentenced as a career criminal under the
sentencing guidelines. For the reasons stated herein, we
affirm his conviction but vacate his sentence and remand
for resentencing.

## I. Background

On March 29, 2002, Curtis Graves sold 72 grams of crack cocaine to Tona Jones. Unfortunately for Graves, Jones was working as an informant for the FBI Safe Streets Task Force at the time of the controlled purchase. Jones was wearing a tape-recording device and the sales transaction between Graves and Jones was observed by law enforcement officers. The recorded conversation included statements by Graves saying that he was "cooking all this dope" and that Jones should let it dry before use. On April 15, 2002, Jones made a second controlled purchase of crack cocaine from Graves, this time buying more than 110 grams.

Graves was charged with two counts of distributing 50 or more grams of crack cocaine. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii). At trial, the government presented testimony from the FBI officers who had worked with Jones and observed the drug purchases. The recorded conversations between Graves and Jones were played for the jury. On February 3, 2004, one day after the trial began, a jury convicted Graves on both counts.

At sentencing, the district court found that based on the quantity of drugs sold, Graves's base offense level was 34. The court then found that Graves was a career offender according to U.S.S.G. § 4B1.1. This enhancement increased the offense level to 37 and, combined with a criminal history category VI, led to a sentencing range of 360 months to life. The court sentenced Graves to 360 months on each count, to be served concurrently.

## II. Analysis

Graves makes several arguments contesting the validity of his conviction.[1] His prosecutorial misconduct and sufficiency of the evidence challenges are without merit. His argument relating to the jury selection process is also flawed, but will be discussed.

Graves claims that his conviction should be overturned because the "exceptionally confused jury-selection process" impaired his right to the intelligent exercise of his peremptory challenges. Graves's trial counsel had used only one of his ten peremptory challenges when the jury was seated, apparently because of a mistaken understanding of when the jury members to try the case would ultimately be selected. We find, however, that Judge Hamilton's explanation of the process was clear.

The venire had been divided into two groups—A and B.[2] When voir dire had been completed for group A, the court heard challenges for cause and two jurors were dismissed. Then Judge Hamilton directed counsel to prepare the peremptory strikes for group A and stated, "We will seat the 12 jurors with the highest priority seating positions who remain unstruck after this." He further explained that "once this group clears, they are in, and then we will move on to the second group."

When the peremptory strikes had been completed for group A—one peremptory strike by Graves's trial counsel and four by the government—Judge Hamilton indicated that twelve regular jurors had been chosen from the thirteen remaining unstruck.

---

[1] At the suggestion of the court at oral argument, Graves withdrew his ineffective assistance of counsel challenge.

[2] The government suggests that Judge Hamilton might have chosen to divide the jury pool into two groups because of the limited space in his courtroom.

The court then asked Graves's counsel, "You follow where we are . . .? We have got 12 jurors now." The government indicated that it was "comfortable going with thirteen if the court is." Graves's counsel responded, "That is fine, Judge."

Finally, the court asked "Do any of you want to exercise a challenge for the 13th juror?" Both the government and Graves's counsel responded that they did not. The court concluded by saying, "So she will be the alternate. We will go with that."

At that point, twelve regular jurors and one alternate had been selected from group A. The jurors in group B were dismissed and the court recessed for lunch. Following that recess, the jury was sworn and the trial commenced. It is apparent that counsel for Graves did not object at any time to the jury selection process or to going forward with the jury that had been selected.

"Peremptory challenges come from [Federal Rules of Criminal Procedure] Rule 24, and Rule 52(a) adds: 'Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.'" *United States v. Patterson*, 215 F.3d 776, 781 (7th Cir.), *vacated on other grounds by* 531 U.S. 1033 (2000). Trial courts have wide discretion in the procedures they may use to select juries under Rule 24. *See* Fed. R. Crim. P. 24(b). In *United States v. Williams*, for example, the trial judge utilized a method of jury selection with which the Florida lawyers on the case were not familiar. 447 F.2d 894 (5th Cir. 1971), *overruled on other grounds by United States v. Archer*, 733 F.2d 354 (5th Cir. 1984). The defendant argued that this method was prejudicial, but failed to indicate any legitimate reason why that was the case. The Fifth Circuit found that the jurors who served were not biased or prejudiced and, therefore, "[t]here is no authority known to us for so limiting the discretion of trial judges in the federal system of courts. Indeed the whole procedure outlined by Rule 24 . . . empha-

sizes the wide discretion committed to the trial judge in the methods employed to select juries." *Id.* at 896-97.

In this case, Graves argues that his right to an impartial jury was violated when two potential jurors, whom he had previously challenged for cause, were seated on the jury. One of the jurors was the wife of a police officer and one had lived next door to drug dealers who had shot a bullet into her home. Each of the empaneled jurors, when asked individually by Judge Hamilton, stated that none of their experiences or relationships would affect their judgment as jurors. Judge Hamilton found that the seated jury was impartial. We grant deference to the experienced trial judge's assessment and decision as to whether potential jurors are impartial. *See United States v. Beasley*, 48 F.3d 262, 267 (7th Cir. 1995).

The jury that sat for Graves's trial was impartial, and so his substantial rights were not violated. *See* Fed. R. Crim. P. 52(a). "Peremptory challenges enable defendants to feel more comfortable with the jury that is to determine their fate, but increasing litigants' comfort level is only one goal among many, and reduced peace of mind is a bad reason to retry complex cases decided by impartial juries." *Patterson*, 215 F.3d at 782. We find that the court did not abuse its discretion in the method chosen to empanel the jury, and that the jury-selection process was explained clearly and was far from "exceptionally confused." Graves's conviction will be affirmed.

The sentencing issues that Graves raises are closer questions. Graves first argues that the career offender enhancement should not have been used to determine his sentence because he did not have the requisite number of prior felony convictions. According to the sentencing guidelines:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant

committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). The guidelines further instruct that "[p]rior sentences imposed in related cases are to be treated as one sentence . . . ." U.S.S.G. § 4A1.2(a)(2). "Therefore, whether any two prior convictions may be counted separately for purposes of the career offender provision depends upon whether the sentences imposed for the convictions were 'related.' " *United States v. Best*, 250 F.3d 1084, 1094 (7th Cir. 2001). The last step in this "relatedness" analysis is to consider Application Note 3 to § 4A1.2:

Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing.

There is no question that Graves meets the first two criteria of the career offender enhancement because he was over 18 when he committed the instant controlled substance offense. Graves argues, however, that his two prior convictions were consolidated for sentencing and thus should qualify as "related" offenses.

A short discussion of Graves's criminal history is required. On April 10, 1993, Graves fired a gun inside a townhouse in which two adults and two young children resided. On January 5, 1994, Graves shot a man in the back of the neck and the leg with a semi-automatic handgun. After committing both aggravated battery offenses, Graves

was arrested only for the first offense. While out on bond, he was arrested for the second shooting. These two offenses were prosecuted as different cases and resolved by different plea agreements. The crimes occurred nine months apart and had different, unrelated victims. Graves was sentenced to serve concurrent terms, but the two sentencings took place on different days in front of different judicial officers.

Sentences are considered consolidated when there is a formal order consolidating them, or if the defendant can show "functional consolidation." *See Best*, 250 F.3d at 1095. "Functional consolidation occurs when there is a record that shows the sentencing court considered the cases sufficiently related for consolidation and effectively entered one sentence for multiple convictions." *United States v. Vallejo*, 373 F.3d 855, 858 (7th Cir. 2004) (internal quotations and citation omitted). We review the district court's decision as to whether the sentences were functionally consolidated for clear error. *See United States v. Buford*, 201 F.3d 937, 942 (7th Cir. 2000).

The district court noted that although the sentences were concurrent and there was a reference in one plea agreement to the other, those facts alone did not support a finding that the sentences were consolidated. We agree. "[C]oncurrent sentences do not automatically create cases consolidated for sentencing." *United States v. Sexton*, 2 F.3d 218, 219 (7th Cir. 1993); *see also Vallejo*, 373 F.3d at 859 (finding sentences not consolidated when each case had a different docket number, the judge referred to the cases as separate, and sentencing orders were entered separately); *Best*, 250 F.3d at 1095 (affirming district court's decision on consolidation when the sentencing court retained separate docket numbers, entered separate judgments and sentences, and the crimes occurred one month apart and were not logically related). The facts supporting a finding that the sentences were not consolidated are even stronger here than they were in *Vallejo* and *Best*; Graves committed two aggravated

batteries nine months apart, the cases were prosecuted as separate crimes, there were two separate plea agreements, and the sentencings took place on different days in front of different judges. We cannot say that the district court erred in finding that Graves's two prior felonies were not "related"; thus, sentencing him as a career offender was proper.

Graves next argues that his sentence violates the Sixth Amendment because the district court, in determining that he was a career offender, made findings of fact which exceeded the judicial factfinding exception for recidivism that was recognized in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), and preserved in *United States v. Booker*, 125 S. Ct. 738 (2005). It is true that a court makes a factual determination when it decides whether a case has been consolidated for sentencing, and until recently we believed that these factual findings fell within the exception for prior convictions. *See United States v. Ngo*, 406 F.3d 839, 842-43 (7th Cir. 2005). *Shepard v. United States*, 125 S. Ct. 1254 (2005), however, "suggests that the recidivism exception exempts only those findings traceable to a prior judicial record of 'conclusive significance.'" *Ngo*, 406 F.3d at 842. The sentencing court may only examine "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 125 S. Ct. at 1263.

"The finding that [Graves's] crimes were not consolidated falls within the narrow parameters permitted by *Shepard*, i.e., those findings that can be made by resorting only to information with the 'conclusive significance' of a prior judicial record." *Ngo*, 406 F.3d at 843. We explained previously that sentences can be considered consolidated only "when there is a record that shows the sentencing court

considered the cases sufficiently related for consolida-
tion . . . ." *Vallejo*, 373 F.3d at 858. "Our precedent ac-
cordingly requires that a district court decide a disputed
consolidation question by resorting to a formal order or a
sentencing transcript, both sources that presumably have
'the conclusive significance of a prior judicial record' as
required by *Shepard*." *Ngo*, 406 F.3d at 843.

As explained above, we find that Graves's Sixth
Amendment rights were not violated. However, the district
court did commit error by sentencing Graves under the now-
defunct mandatory guidelines scheme. *See United States v.
Schlifer*, 403 F.3d 849, 853 (7th Cir. 2005). Because Graves
preserved his *Blakely/Booker* claim by objecting to the pre-
sentence report on those grounds, he is entitled to plenary
review of the sentencing error. *Id.* at 854. The district
court's error in treating the guidelines as mandatory is, in
effect, a misapplication of the guidelines, and so Graves's
sentence must be vacated unless the error was harmless.
*Id.* "When an error relates to the validity of a defendant's
sentence, it is harmless only if it did not affect the district
court's choice of sentence." *Id.* (citations omitted).

We can find no evidence in the record proving conclusively
that the district court would have chosen the exact same
sentence for Graves had he known that the guidelines were
merely advisory. The court stated that Graves had "a track
record in both vicious violence with guns and trafficking in
the most destructive drug around and, so, the sentence is
appropriately a heavy one." The court also noted that if it
had decided that the career offender enhancement could not
be applied, it might have "consider[ed] the possibility of an
upward departure based on an under representative
criminal history." And although these statements seem to
indicate that the court was satisfied with the 360 month
sentence, "we require a higher degree of certainty" for a
conclusion that the guideline misapplication was harmless.
*See Schlifer*, 403 F.3d at 854. Based on the record, "this

court would have to speculate that the district court's error in thinking itself bound by the guidelines did not affect the sentence." *Id.* at 855. Therefore, we must vacate Graves's sentence and remand for resentencing.

### III.  Conclusion

Graves's conviction is AFFIRMED. However, we VACATE his sentence and REMAND the case to the district court for resentencing consistent with this opinion and *Booker*.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*